■ VICKI IMPERATI et al., Appellants, v KOHL's DEPARTMENT STORES, INC., Defendant and Third-Party Plaintiff-Respondent-Appellant, and DENA MARIE, LLC, Appellant. TOWER CLEANING SYSTEMS, INC., Doing Business as US MAINTENANCE, Third-Party Defendant-Respondent-Appellant. (And a Fourth-Party Action.)
[936 NYS2d 374]—

Kavanagh, J.

Plaintiffs contend that Supreme Court erred when it granted Kohls' motion for summary judgment on the ground that, as a matter of law, the storm in progress doctrine applied to the circumstances surrounding this accident. Specifically, Kohls claimed that on the facts presented, Kohls did not have a reasonable amount of time to address the hazardous conditions created by the storm because it had ended only a short time prior to plaintiff's accident (see *O'Neil v Ric Warrensburg Assoc., LLC*, 90 AD3d 1126, 1126 [2011]; *Sanders v Wal-Mart Stores, Inc.*, 9 AD3d 595, 595 [2004]; *Howard v J.A.J. Realty Enters.*, 283 AD2d 854, 855 [2001]; *Schleifman v Prime Hospitality Corp.*, 246 AD2d 789, 789 [1998]). Plaintiffs, in opposition to the motion, submitted a report from a hydrogeologist, John A. Conrad, which included weather station data indicating that $4^{1}/_{2}$ miles from the scene of the accident the temperature that day ranged between 16 to 40 degrees Fahrenheit, and two inches of precipitation in the form of ice pellets and snow had fallen to the ground. Another expert, William Marletta, also reported that it had snowed in the area on the previous evening, neither expert was able to state with any certainty when the storm had ended. Also, plaintiff recalled that it had snowed the prior evening, but it was sunny and clear when she arrived at the store parking lot that morning between 10:00 A.M. and 11:00 A.M. In addition, Steven Heller, a Kohls employee, testified that he was on the premises by 8:00 A.M. and, while there was no precipita-

tion at that time, he noticed that ice had formed in areas of the store parking lot. This evidence supports defendants' position that some precipitation fell in the area during the evening before plaintiff's accident, but does not definitively establish when this precipitation occurred or, more importantly, when it ended. Since it is uncontroverted that there was no precipitation in the area for at least two hours prior to plaintiff's accident, a question of fact necessarily exists as to whether Kohls had a reasonable amount of time to alleviate any hazardous conditions that existed in the parking lot which may have been created by the storm (*see Baker v Cayea*, 74 AD3d 1619, 1620 [2010]). Therefore, defendants' motion for summary judgment dismissing plaintiffs' complaint should have been denied.

Plaintiffs, in their motion for summary judgment, maintain that the icy conditions in the parking lot existed before precipitation fell in the area on the night prior to plaintiff's accident and those conditions were caused by water that froze after it flowed onto the parking lot from snow banks created when Tower plowed to clear the premises of snow. On this issue, initially we note that there appears to be no question that some precipitation fell in the area the night before plaintiff's accident, and it is not at all clear from the evidence submitted what effect this precipitation had on the conditions that existed on the premises immediately before plaintiff's accident. Also, plaintiffs' experts acknowledge never personally observing water flowing from snow banks onto the area of the parking lot where plaintiff fell, and she admits never actually seeing water running from the snow banks onto the parking lot, but rather assumed that the icy conditions were created by snow melt from snow banks created when Tower plowed the parking lot. However, defendants presented testimony from Kohls' employees that when the premises were plowed, the snow was pushed onto an isolated area of the parking lot where water could not have flowed to where plaintiff had her accident. Simply stated, questions abound as to how the conditions that caused plaintiff's fall were created and, as a result, plaintiffs' motion for summary judgment was properly denied (*see O'Neil v Ric Warrensburg Assoc., LLC*, 90 AD3d at 1127; *Wood v Schenectady Mun. Hous. Auth.*, 77 AD3d 1273, 1274 [2010]; *Spicer v Estate of Ondek*, 60 AD3d 1234, 1235 [2009]; *see also Hayes v Norstar Apts., LLC*, 77 AD3d 1329, 1330 [2010]; *Parker v Rust Plant Servs., Inc.*, 9 AD3d 671, 673 [2004]; *Convertini v Stewart's Ice Cream Co.*, 295 AD2d 782, 783-784 [2002]).

Turning to the cross appeals,[4] Kohls claims that Tower, by their contract, was obligated to indemnify it if it was found liable for the injuries plaintiff sustained in this accident.[5] Tower argues that Kohls' claim should be dismissed because the contract required certain weather conditions to exist at the premises before it was obligated to plow and salt the parking lot, and those conditions did not exist on the date of plaintiff's accident (*see Perales v First Columbia 1200 NSR, LLC*, 88 AD3d 1213, 1214 [2011]; *Kearsey v Vestal Park, LLC*, 71 AD3d 1363, 1366 [2010]). In that regard, the contract provides that "[Tower] shall indemnify, defend and hold [Kohls] . . . harmless from any and all liability, injury, judgments, causes of action, claims, . . . asserted, alleged, demanded, claimed or recovered by or on behalf of any person . . . arising out of, growing out of or related whatsoever to [Tower's] performance or failure to perform under the terms of this Agreement, including but not limited to personal injuries." Also, Tower was obligated under the contract to perform "[a]ll snowplowing and salting . . . automatically, without [Kohls'] request, *whenever the weather conditions deem it necessary*" (emphasis added) and, when snow had accumulated to one inch or more, "[Tower] shall be responsible for all areas including, but not limited to, drive lanes, parking lot, sidewalks, entrances, emergency exit doors, and steps, etc." When read together, these provisions in the contract required Tower to salt and plow the property whenever weather conditions in the area warranted, and automatically required it to plow whenever precipitation resulted in snow accumulations of one inch or more on the premises. Here, the undisputed testimony is that precipitation fell in the area the night before plaintiff's accident, and parts of the parking lot that morning were covered with ice. Given the broad scope of the obligation assumed by Tower under this contract, it is, as a matter of law, required to indemnify Kohls if Kohls is held responsible for plaintiff's accident, and Kohls' motion for summary judgment in that regard must be granted. As a result, we need not reach Kohls' claim regarding common-law indemnification, and note that since it was raised on appeal for the first time in Kohls' reply brief, it is not properly before us (*see Giblin v Pine Ridge Log Homes, Inc.*, 42 AD3d 705, 706 [2007]).

Peters, J.P., Rose, McCarthy and Garry, JJ., concur. Ordered

---

4. Supreme Court dismissed, as moot, Kohls' and Tower's motion for summary judgment on the issue of contractual indemnification.

5. At oral argument, Kohls indicated that it had withdrawn its claim that Tower breached the contract by failing to procure liability insurance naming Kohls as an additional insured.

that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment dismissing the complaint and dismissed, as moot third-party plaintiff's motion for summary judgment on its claim for contractual indemnification; defendants' motion denied and third-party plaintiff's motion granted to said extent; and, as so modified, affirmed.