■ Nigen Vosper et al., Appellants, v Fives 160th, LLC, Respondent, et al., Defendant. [973 NYS2d 589]—

Order, Supreme Court, New York County (Eileen A. Rakower, J.), entered on or about May 21, 2012, which, to the extent appealed from as limited by the briefs, granted defendant Fives 160th, LLC's motion for summary judgment dismissing the complaint as against it, unanimously reversed, on the law, without costs, and the motion denied.

Plaintiff Nigen Vosper testified that he was injured when he slipped and fell on the front entrance landing of his apartment building as he left for work at approximately 8:00 a.m. on December 24, 2008. He testified that the landing was covered in a transparent sheet of ice, apparently caused by overnight precipitation.

The motion court erred in applying Administrative Code of the City of New York § 16-123 to this case and finding that defendant Fives 160th, LLC should have had until 11:00 a.m. to remedy the icy condition on the landing. Section 16-123, by its plain language, only governs property owners' duty to remove snow, ice, and other debris from the public sidewalks; it does not apply to their own property. We reject defendant's claim that its landing should be considered part of the sidewalk. The record does not show that the landing fits the definition of "sidewalk" found in Administrative Code of the City of New York § 19-101 (d), and the photographs clearly depict the location of the accident as several feet away from the abutting sidewalk flag.

The record presents issues of fact as to the applicability of the "storm in progress" rule (see Powell v MLG Hillside Assoc., 290 AD2d 345 [1st Dept 2002]). The undisputed weather data shows that on the day of plaintiff's accident, a light mixture of sleet and freezing rain fell in the vicinity of the building between 3:00 and 4:00 a.m., and only freezing rain was falling by 4:00 a.m. and normal rain by no later than 6:00 a.m., when the temperature rose above freezing, and that from 6:00 a.m. onward, there was only trace or light rainfall, with hourly accumulations of less than one-tenth of an inch (see id. at 345-346; see also Tucciarone v Windsor Owners Corp., 306 AD2d 162, 163 [1st Dept 2003]; Pipero v New York City Tr. Auth., 69 AD3d 493 [1st Dept 2010]). Moreover, as defendant's live-in superintendent was present, questions of fact exist whether the two hours be-

tween the cessation of freezing rain and the accident should have afforded him enough time to notice the condition and whether he should have taken steps to remedy it (*see Powell,* 290 AD2d at 346).

In any event, there are issues of fact whether the landing's alleged structural defects may have contributed to or exacerbated the hazardous condition on the landing. Plaintiff's architectural expert averred that defendant violated several specific provisions of the New York City Building Code when, the year before the accident, it removed the first step of the landing, which was the tenants' sole means of entering and exiting the building, and replaced it with the sloped landing at issue. He explained that the modification violated the Code's provision requiring level platforms across doorways. He opined that the uneven, sloped nature of the landing made it dangerous and likely to produce a fall, and that when covered in snow or ice, the risk greatly increased, presenting the "perfect trap," particularly since pursuant to the Code the landing's excessive slope ratio required handrails, and there were none.

The motion court erred in finding that the structural defects alleged by plaintiff's expert could not have been a proximate cause of his fall because plaintiff testified that he slipped on ice on the landing, and did not attribute his fall to the defects. There is no evidence that such technical knowledge was within plaintiff's purview. It is sufficient that he identified the slippery condition of the icy landing as the cause of his fall, and his expert, who physically inspected the landing, explained that the structural defects he observed, all in violation of applicable Building Code provisions, caused or contributed to the condition (*see e.g. Rodriguez v Leggett Holdings, LLC,* 96 AD3d 555 [1st Dept 2012]; *Babich v R.G.T. Rest. Corp.,* 75 AD3d 439, 440-441 [1st Dept 2010]). Defendant's expert's disagreement with plaintiff's expert's findings or methodology presents issues of fact and credibility for a jury to resolve. Concur—Gonzalez, P.J., Tom, Saxe, Manzanet-Daniels and Gische, JJ. **[Prior Case History: 2012 NY Slip Op 31359(U).]**