Telesco v Smith (2021 NY Slip Op 06728)





Telesco v Smith


2021 NY Slip Op 06728


Decided on December 2, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 2, 2021

531880
[*1]Nicholas Telesco et al., Respondents,
v
Matthew Smith et al., Appellants.

Calendar Date:October 20, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ.

McCabe & Mack LLP, Poughkeepsie (Kimberly Hunt Lee of counsel), for appellants.
Finklestein & Partners, LLP, Newburgh (Alexandria Awad of counsel), for respondents.



Lynch, J.
Appeal from an order of the Supreme Court (Mott, J.), entered August 14, 2020 in Ulster County, which denied defendants' motion for summary judgment dismissing the amended complaint.
After plaintiff Nicholas Telesco was injured when he slipped on ice at work while walking to the bathroom — which had an exterior entrance — he and his spouse, derivatively, commenced this action against defendants, the owners of the subject property, asserting negligence. Following joinder of issue, defendants moved for summary judgment dismissing the amended complaint, contending that there was a storm in progress at the time of Telesco's fall and they did not have actual or constructive notice of any preexisting icy condition. Supreme Court denied the motion, finding that, although defendants satisfied their prima facie burden to demonstrate that a storm was in progress at the time of the fall, triable issues of fact existed as to whether the icy condition preexisted the storm and whether defendants had actual or constructive notice thereof. Defendants appeal.
We affirm. "A property owner will not be held liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter" (Washington v Trustees of the M.E. Church of Livingston Manor, 162 AD3d 1368, 1369 [2018] [internal quotation marks and citations omitted]; see Battaglia v MDC Concourse Ctr., LLC, 34 NY3d 1164, 1166 [2020]; Griguts v Alpin Haus Ski Shop, Inc., 150 AD3d 1438, 1439 [2017]; Potter v YMCA of Kingston & Ulster County, 136 AD3d 1265, 1266 [2016]). If the property owner demonstrates as much, the burden shifts to the plaintiff "to produce evidence that raises an issue of fact as to whether [the] dangerous snow and/or ice that contributed to the accident existed prior to that storm so as to provide actual or constructive notice to the defendant" (Stewart v ALCOA, Inc., 184 AD3d 1057, 1058 [2020] [internal quotation marks and citations omitted]; see McLaughlin v 22 New Scotland Ave., LLC, 132 AD3d 1190, 1191 [2015]).
In support of their motion for summary judgment, defendants submitted, among other things, transcripts of the parties' deposition testimony, as well as affidavits from a meteorologist and a building code inspector. During his deposition, Telesco revealed that on the date of the accident — February 7, 2018 — he was leasing commercial space in a building owned by defendants, where he performed automotive painting and repair services. The building's sole bathroom had an exterior entrance. When Telesco arrived at work around 9:30 a.m. or 10:00 a.m. that morning, it was "flurrying" outside and there was "a dusting" of snow on the ground, "[j]ust enough to cover the vision of the ground." Around 12:00 p.m., he left his shop to go to the bathroom, using an exterior concrete walkway. According to Telesco, the walkway was covered with a "dusting" of snow and did not have any footprints or salt [*2]on it.
Although Telesco did not feel any ice below the snow while walking, around 12:10 p.m., he slipped and fell near the down spout of a gutter that was attached to the building and emptied into the seams of the walkway. After he fell, Telesco identified a patch of "[i]ce coming out of the downspout and on top of the walkway under the snow," opining that this condition had caused him to fall. Telesco testified that he had never before seen ice coming out of a downspout on the premises and that the last time it had snowed before the incident was the previous Saturday. Telesco revealed that he made two complaints to defendants regarding snow and ice removal at the premises, at least one of which he had made prior to this incident and involved an incident in which he fell by the bathroom while he was shoveling snow. Telesco also noted that several of his customers had complained to him about a lack of timely snow removal in the parking lot and that "it was hard walking into the shop sometimes" because of the snow. However, Telesco acknowledged that he did not inform defendants of these customer complaints.
Defendant Matthew Smith, one of the owners of the property, revealed during his deposition that he utilized a third party to plow the parking area of the premises, but typically handled ice removal himself. Smith maintained that he was at the property "every day" and, after weather events, "would go around the entire property and sand and salt areas that [were] slick." Smith testified that he applied salt or sand on the premises after the most recent storm that preceded the subject weather event, but could not recall when such storm had occurred. He also maintained that, if he became aware of ice accumulating on the walkway where Telesco fell, he "would have applied magnesium chloride." Smith remembered that there was "freezing rain" the evening before this incident and on the morning thereof, and explained that he had not applied sand or salt on the premises prior to Telesco's fall because "it was still snowing and freezing" at that time.
Smith revealed that he had replaced the gutters at the premises himself prior to Telesco's tenancy and testified that the water flowing from the downspouts would either flow into the gravel parking lot or into the "three-quarter inch wide seam" on the walkway. Although Smith did not recall anyone ever discussing with him recurring ice conditions forming near the downspout in the area where Telesco fell, he acknowledged that, in 2017, an insurance adjuster had recommended a modification of the downspouts to allow for underground drainage.
Defendants also tendered an affidavit of Alicia C. Wasula, a certified consulting meteorologist who reviewed weather records from the area. Wasula explained that the last precipitation event that produced any accumulation prior to this incident occurred on February 4, 2018 and ran into the early morning hours of February 5, 2018. A total of .63 inch of precipitation [*3]fell as a result of that storm. Thereafter, the conditions turned colder, with the air temperature falling below freezing by 5:53 p.m. on February 6, 2018 and remaining below freezing through the time of the incident. Wasula noted that that the weather "was fairly quiet on February 6, 2018," but a storm system impacted the region on the morning of the incident. That morning, there was light snow on the ground at 8:16 a.m., which increased in intensity after approximately 10:00 a.m. and continued to fall until 1:52 p.m., at which time it turned into rain. Approximately 1.5 to 2.5 inches of snow fell between 7:45 a.m. and 12:00 p.m. and the air temperature was below freezing. Wasula ultimately opined that "ongoing, accumulating snow was occurring at the incident site at the time of the accident" and "the amount of snow that had fallen . . . would have been enough to cause slippery conditions on untreated, undisturbed and exposed outdoor services." Defendants also submitted an affidavit from Gary E. Beck, a building inspector and certified code enforcement official, who opined that the gutter discharge system at the premises was "in compliance" with the relevant maintenance code and "in conformance with good and accepted practices."
Based upon Smith's and Telesco's testimonies that it snowed through the morning of February 7, 2018, coupled with the meteorological data confirming that snow continued to fall until 1:52 p.m., defendants satisfied their prima facie burden to demonstrate that a storm was in progress at the time of Telesco's fall (see Stewart v ALCOA, Inc., 184 AD3d at 1059; Haxhia v Varanelli, 170 AD3d 679, 682 [2019]; Griguts v Alpin Haus Ski Shop, Inc., 150 AD3d at 1439). The burden therefore shifted to plaintiffs to demonstrate a triable issue of fact as to whether the dangerous snow and/or ice existed prior to the storm and whether defendants had actual or constructive notice of the hazard (see Washington v Trustees of M.E. Church of Livingston Manor, 162 AD3d at 1370; Potter v YMCA of Kingston & Ulster County, 136 AD3d at 1265).
In opposition, plaintiffs submitted a weather analysis report authored by Steven Roberts, a certified consulting meteorologist. After reviewing the relevant meteorological records from the surrounding area, Roberts determined that, on February 5, 2018, "[a]pproximately [one] inch of snow and ice cover was present at the start of the day (midnight)" and "a trace [amount] (less than .5 inch) of snow and ice cover remained at the end of the day." As to the conditions on February 6, 2018, Roberts noted that "[a] trace [amount] (less than 0.5 inch) of snow and ice cover was present at the start of the day (midnight) [and] [p]recipitation in the form of snow fell from around 7:25 [a.m.] to 9:35 [a.m.]., which produced around 0.6 inch of snow." Temperatures reached 33 degrees between 4:00 p.m. and 5:00 p.m. before again dropping below freezing. According to the report, "a trace [amount] (less than 0.5 [*4]inch) of snow and ice cover remained at the end of the day" on February 6, 2018. With respect to February 7, 2018, "a trace [amount] (less than 0.5 inch) of snow and ice cover was present at the start of the day (midnight)" and snow began falling "at 7:45-8:15 [a.m.], which continued through 1:05 [p.m.]." Roberts concluded, with a reasonable degree of meteorological certainty, that on February 7, 2018 at 12:10 p.m., "approximately 2.3-2.7 inches of snow and ice cover was present on untreated, undisturbed, and exposed outdoor surfaces" on the premises, which "was the result of snow that had been falling since 7:45-8:15 [a.m.], and include[d] preexisting snow and ice from events that occurred prior to February 6, 2018" (emphasis added).
In addition to the foregoing, plaintiffs relied on a picture taken by a friend of Telesco shortly after the incident that depicted the conditions at the subject location. The picture shows snow accumulation on the subject walkway and what appears to be ice protruding from the downspout of the gutter into the walkway. Moreover, plaintiffs produced affidavits from Eric Dickel — an individual in the business of customizing and installing gutters on residential and commercial properties — and Federick G. Bemer, an architect. Dickel and Bemer both opined that, prior to the incident, there were available alternative gutters and downspouts appropriate for the premises to prevent snowmelt discharge from draining onto the subject walkway.
Viewing the evidence in the light most favorable to plaintiffs, we conclude that they have established triable issues of fact as to whether the ice on the walkway existed prior to the underlying storm and whether defendants had actual or constructive notice of the dangerous condition (see Stewart v ALCOA, Inc., 184 AD3d at 1059; Washington v Trustees of the M.E. Church of Livingston Manor, 162 AD3d at 1370; Potter v YMCA of Kingston & Ulster County, 136 AD3d at 1266; O'Neil v Ric Warrensburg Assoc., LLC, 90 AD3d 1126, 1127 [2011]; Mondello v DiStefano, 16 AD3d 637, 639 [2005]). Defendants' remaining contentions, to the extent not expressly addressed, have been considered and found lacking in merit.
Egan Jr., J.P., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, with costs.