Anson v Monticello Raceway Mgt., Inc. (2023 NY Slip Op 03393)

Anson v Monticello Raceway Mgt., Inc.

2023 NY Slip Op 03393

Decided on June 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 22, 2023

535662 
[*1]Anthony Anson, Respondent,
v
Monticello Raceway Management, Inc., Appellant.

Calendar Date:April 25, 2023

Before:Garry, P.J., Egan Jr., Lynch, Fisher and McShan, JJ.

Schwab & Gasparini, PLLC, Brewster (Louis U. Gasparini of counsel), for appellant.
Basch & Keegan, Kingston (Derek J. Spada of counsel), for respondent.

Egan Jr., J.
Appeal from an order of the Supreme Court (James P. Gilpatric, J.), entered June 14, 2022 in Ulster County, which denied defendant's motion for summary judgment dismissing the complaint.
On January 23, 2019, plaintiff was allegedly injured when he slipped and fell on an icy sidewalk outside of a casino owned and maintained by defendant in the Village of Monticello, Sullivan County. Plaintiff commenced this personal injury action in June 2019, asserting that defendant failed to maintain the premises in a reasonably safe condition. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint upon the ground that the storm in progress doctrine applied. Supreme Court, finding that questions of fact existed on that point, denied the motion. Defendant appeals, and we affirm.
The storm in progress rule provides that, "[a]lthough a landowner owes a duty of care to keep his or her property in a reasonably safe condition, he [or she] 'will not be held liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter' " (Sherman v New York State Thruway Auth., 27 NY3d 1019, 1020-1021 [2016], quoting Solazzo v New York City Tr. Auth., 6 NY3d 734, 735 [2005]; see Marra v Zaichenko, 214 AD3d 1165, 1166 [3d Dept 2023]). The rule is designed to relieve a landowner of the obligation to clear the area "while continuing precipitation or high winds are simply re-covering [it] as fast as they are cleaned, thus rendering the effort fruitless" (Powell v MLG Hillside Assoc., 290 AD2d 345, 345 [1st Dept 2002]). Accordingly, while there does not need to be a major winter storm occurring in order to invoke the storm in progress rule, the proof does need to "establish[ ] the existence of an ongoing hazardous weather condition" (Zima v North Colonie Cent. School Dist., 225 AD2d 993, 994 [3d Dept 1996]; see Camacho v Garcia, 273 AD2d 835, 835 [4th Dept 2000]).
Defendant provided the deposition testimony of plaintiff, who stated that he arrived at the casino around noon and that, at that time, there were wet patches on the pavement as he walked inside from the parking lot. He added that the sidewalk or parking lot did not appear to have been salted and that, although the weather was "gloomy," there was no precipitation falling. Plaintiff also testified that he did not recall seeing any precipitation falling when he left the casino, which video footage reflected had happened at 4:18 p.m., and that he slipped and fell on an icy patch on the sidewalk leading out to the parking lot. Defendant offered no evidence to show that anyone had seen precipitation falling at the casino that day or to describe the condition of the parking lot. Defendant did, however, provide the affidavit of two meteorologists who rendered an opinion of conditions at the casino based upon their review of, among other things, surface observations at several locations [*2]in the surrounding area, weather bulletins and advisories issued by the National Weather Service, and radar and satellite imaging. The meteorologists opined, in particular, that intermittent light snow, sleet and/or freezing rain was falling at the casino from 11:26 a.m. to 7:30 p.m. and that light rain or sleet was falling for the remainder of the day. The total accumulation, in their view, amounted to a trace of snow and sleet that was "too light to measure" and approximately 1/10th of an inch of ice, with the equivalent of .13 inches of liquid water falling throughout the day. The meteorologists further opined that light freezing rain would have been falling at 5:00 p.m. — 40 minutes after plaintiff left the casino and fell — and that, although the air temperature had risen throughout the day and was above freezing by 5:00 p.m., ice would have still been accumulating given that the ground was still frozen due to cold weather over the previous several days.
Assuming, without deciding, that this evidence satisfied defendant's initial burden of demonstrating that the weather was sufficiently poor in the leadup to plaintiff's accident to implicate the storm in progress rule, plaintiff pointed to a variety of evidence to call the rule's applicability into question (see Boynton v Eaves, 66 AD3d 1281, 1282 [3d Dept 2009]; Micheler v Gush, 256 AD2d 1051, 1052 [3d Dept 1998]; Zima v North Colonie Cent. School Dist., 225 AD2d at 994; but see Bodoff v Cedarhurst Park Corp., 213 AD3d 802, 803 [2d Dept 2023]; Govenettio v Dolgencorp of N.Y., Inc., 175 AD3d 1805, 1806 [4th Dept 2019]; Powell v MLG Hillside Assoc., 290 AD2d at 345-346). Initially, plaintiff pointed out that the voluminous weather records provided by defendant showed that areas surrounding the casino received varying amounts of precipitation on the day of the accident, with locations reporting either minimal precipitation or none at all. Plaintiff also provided evidence to challenge the extent and the timing of any inclement weather at the casino, pointing not only to his own deposition testimony that he had not observed any precipitation while entering and exiting the casino, but also an incident report prepared by defendant's employees that did not attribute plaintiff's accident to poor weather and, indeed, left the section labeled "[w]eather" conspicuously blank. Plaintiff further produced snow removal logs prepared by defendant's employees to show that, although the casino's parking lot and walkways had been plowed, shoveled, salted and/or sanded on the two days prior to plaintiff's accident and on the day after it, no cleanup or treatment efforts were made on the day of the accident itself. The absence of a snow log for that day was placed in context via the deposition testimony of the executive director of racing and facilities at the casino, who testified, among other things, that employees would have monitored the weather during the day and performed salting or sanding if necessary, [*3]as well as that the lack of a snow log meant that no work had been done because it was "not needed."
In our view, Supreme Court properly determined from the foregoing that questions of fact existed as to "whether a storm was in progress so as to suspend defendant['s] duty to remedy the dangerous condition until a reasonable time after the storm had ceased" (Baker v Cayea, 74 AD3d 1619, 1620 [3d Dept 2010]; see Imperati v Kohl's Dept. Stores, Inc., 91 AD3d 1111, 1112-1113 [3d Dept 2012]; Wood v Schenectady Mun. Hous. Auth., 77 AD3d 1273, 1273-1274 [3d Dept 2010]; cf. Zima v North Colonie Cent. Sch. Dist., 225 AD2d at 993-994). We are further satisfied that, in view of the proof that defendant's employees had plowed, salted or sanded in the two days prior to the accident, as well as photographs showing accumulated snow in the unpaved areas near where plaintiff fell, questions of fact also exist as to whether he slipped on preexisting ice (see Potter v YMCA of Kingston & Ulster County, 136 AD3d 1265, 1266 [3d Dept 2016]; Englerth v Penfield Cent. School Dist., 85 AD3d 1714, 1715 [4th Dept 2011]). Thus, defendant's motion was properly denied.
Garry, P.J., Lynch, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.