Gagne v MJ Props. Realty, LLC (2023 NY Slip Op 05769)

Gagne v MJ Props. Realty, LLC

2023 NY Slip Op 05769

Decided on November 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 16, 2023

535727
[*1]Magen Gagne et al., Appellants,
v
MJ Properties Realty, LLC, et al., Respondents.

Calendar Date:September 12, 2023

Before:Lynch, J.P., Ceresia, Fisher and Powers, JJ.; Reynolds Fitzgerald, J., vouched in.

The Towne Law Firm, PC, Albany (James T. Towne Jr. of counsel), for appellants.
Law Office of M. Randolph Belkin, Latham (Derek L. Hayden of counsel), for respondents.

Fisher, J.
Appeal from an order of the Supreme Court (James H. Ferreira, J.), entered July 8, 2022 in Schoharie County, which, among other things, granted defendants' motion for summary judgment dismissing the complaint.
On December 19, 2017, plaintiff Magen Gagne sustained personal injuries when she slipped and fell on an icy walkway outside of a building located in the Town of Clifton Park, Saratoga County. Gagne and her spouse, derivatively, commenced this negligence action against the property owner, defendant One Fairchild Square, Inc., and the property maintenance company allegedly responsible for the premises, defendant MJ Properties Realty, LLC, asserting that defendants failed to maintain the premises in a reasonably safe condition. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint, alleging, among other things, that Gagne slipped and fell while a storm was in progress. Plaintiffs opposed this motion and separately moved to amend the complaint to substitute M.J. Properties of Clifton Park, Inc. as the defendant responsible for the property's maintenance. Supreme Court granted defendants' motion and dismissed the complaint, finding that they made a prima facie showing that the storm in progress doctrine applied and that plaintiffs failed to raise a triable issue of fact as to the applicability of the doctrine or whether the ice was present before the storm. As a result, the court denied plaintiffs' motion to amend the complaint as moot. Plaintiffs appeal.
Under the storm in progress doctrine, "[a] property owner will not be held liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter" (Telesco v Smith, 200 AD3d 1140, 1141 [3d Dept 2021] [internal quotation marks and citation omitted]). "The rule is designed to relieve a landowner of the obligation to clear the area while continuing precipitation or high winds are simply re-covering it as fast as they are cleaned, thus rendering the effort fruitless" (Anson v Monticello Raceway Mgt., Inc., 217 AD3d 1231, 1231 [3d Dept 2023] [internal quotation marks, brackets and citation omitted]). "Nevertheless, if the storm has passed and precipitation has tailed off to such an extent that there is no longer any appreciable accumulation, then the rationale for continued delay abates, and commonsense would dictate that the rule not be applied" (Scheuer v State of New York, 198 AD3d 1225, 1227 [3d Dept 2021] [internal quotation marks and citations omitted]). Although there does not need to be a major weather event to trigger the application of the storm in progress doctrine, the proof must "establish the existence of an ongoing hazardous weather condition" that amounts to more than trace accumulations (Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1231 [internal quotation marks, brackets and citation omitted]; see Gill v Bk Bryant Ave. HDFC., Inc., ___ [*2]AD3d ___, ___, 196 NYS3d 449, 449 [1st Dept 2023]; Arghittu-Atmekjian v TJX Cos., Inc., 193 AD3d 1395, 1396-1397 [4th Dept 2021]; Edmund-Hunter v Toussie, 190 AD3d 946, 947 [2d Dept 2021]; Patricola v General Motors Corp., 170 AD3d 1506, 1506-1507 [4th Dept 2019]; Haraburda v City of New York, 168 AD3d 485, 486 [1st Dept 2019]; Powell v MLG Hillside Assoc., 290 AD2d 345, 345-346 [1st Dept 2002]).
In support of their motion, defendants offered the deposition testimony of Gagne, who testified that she worked in a building at the subject property, and that there was a "light drizzle" when she left her house for work at approximately 6:30 a.m. on the morning of the incident. Although she believed that she had used her windshield wipers during her commute, Gagne did not recall the weather conditions or if there was any precipitation falling when she arrived at work, other than that it was still "gloomy." She further testified that she slipped on a patch of black ice on a sidewalk leading toward her office building a little before 7:30 a.m., and that she reported the incident to a coworker who was the first person that she encountered after her fall. The coworker also provided deposition testimony, stating that there was no precipitation falling when he arrived for work that day and that he did not have any difficulty walking into the office on the same sidewalk. He further testified that, immediately after Gagne informed him of her slip and fall, he went out to take photographs of the area but only observed "a wet area . . . no ice, just a little wetness like maybe a half circle, semicircle" with a diameter of four inches.
Defendants also proffered the affidavit of a certified consulting meteorologist, Howard Altschule, who reviewed various meteorological data and national weather advisories from the area where the subject property is located. According to Altschule, such area was impacted by a winter storm on December 18 and 19, 2017, which caused approximately 0.3 of an inch of snow and a coating of new ice/glaze less than 0.1 of an inch thick on the day before the incident. As for the day of the incident, Altschule explained that, although there were only occasional periods of "freezing drizzle" or "light freezing rain" between midnight and Gagne's fall, that this was a lull in the precipitation of the continuing winter storm which ended later that evening. Based on various forms of weather data, Altschule opined that the total accumulation for the entire day of the incident was a coating of new ice/glaze less than 0.1 of an inch thick. He further opined that the temperature for the day of the incident remained above freezing all day, having a low of 33 degrees and a high of 51 degrees.
Assuming, without deciding, that this evidence was sufficient to meet defendants' moving burden that the storm in progress doctrine applied, plaintiffs have raised a triable issue of fact sufficient to defeat this branch of defendants' motion for summary judgment[*3](see Gill v Bk Bryant Ave. HDFC., Inc., 196 NYS3d at 449; Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1232; Arghittu-Atmekjian v TJX Cos., Inc., 193 AD3d at 1396-1397; Vosper v Fives 160th, LLC, 110 AD3d 544, 544-545 [1st Dept 2013]; Powell v MLG Hillside Assoc., 290 AD2d at 346). Most notably, plaintiffs highlight that the weather records provided by defendants revealed that the areas surrounding the location of Gagne's fall received only trace accumulations of precipitation for the entire day of the incident — and some areas received no precipitation at all (see Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1232-1233). This is corroborated by the affidavit of plaintiffs' expert in opposition, Steven Roberts, also a certified consulting meteorologist, who opined that only between a trace of 0.01 to 0.02 of an inch of precipitation fell in the approximately 14 hours prior to Gagne's fall at the subject property. Plaintiffs also provided the relevant excerpts of deposition testimony, including from the coworker, who further testified that he did not know when the sidewalk was last treated for ice prior to the incident and that he did not recall observing any salt or sand on the walkway when he arrived for work that day. Additionally, plaintiffs provided the deposition testimony of the project manager responsible for maintaining the premises, who testified that his company did not keep snow removal records but had a policy to periodically check, at no set interval, the sidewalks for snow and ice. However, he did not recall any snow or ice removal efforts on the day before or the day of the incident (see id. at 1233).
When viewing this evidence in a light most favorable to plaintiffs, we conclude that Supreme Court erred in awarding defendants summary judgment based on the storm in progress doctrine (see Gill v Bk Bryant Ave. HDFC., Inc., 196 NYS3d at 449; Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1232-1233; Vosper v Fives 160th, LLC, 110 AD3d at 544-545). The parties' testimony, expert affidavits and meteorological data failed to conclusively demonstrate whether there was a storm in progress or whether such storm had passed and there was no longer any appreciable accumulation so as to continue to suspend defendants' duty to correct storm-created hazards. Although Gagne testified that there was a light drizzle falling when she left for work and that she believed she used her windshield wipers on her commute, she also testified that she worked approximately an hour away from the subject property, and no witness at the location had recalled whether there was any precipitation falling at the subject property on the entire day of the incident (see Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1233). The meteorological data offered in support of defendants' motion did not prove otherwise. One set of meteorological data revealed that the total daily observations of precipitation on the day of the incident was 0.02 of an inch, but [*4]another set of data for the total hourly observations for the same weather station [FN1] indicated that this total 0.02 of an inch of precipitation occurred at 7:51 p.m. — more than 12 hours after Gagne's fall — thereby raising the question of what, if any, precipitation had actually fallen in the hours before Gagne's fall.[FN2] Indeed, both experts generally agree that there were total accumulations of between 0.01 and 0.02 of an inch of precipitation for the entire day of the incident, however, these amounts are even less than the amount of precipitation that other courts have routinely found to be insufficient as a matter of law to trigger application of the doctrine. For example, courts have declined to apply the doctrine, as a matter of law, where precipitation had tailed off to less than 0.1 of an inch per hour,not just per day (see Powell v MLG Hillside Assoc., 290 AD2d at 345-346); approximately 0.1 of an inch of ice or 0.13 inches of liquid precipitation fell throughout the day(see Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1232); trace amounts of sleet and freezing rain turning to light rainfall during and after the fall, with hourly accumulations of less than 0.1 of an inch (see Vosper v Fives 160th, LLC, 110 AD3d at 544); "trace" amounts or less than 0.1 of an inch of precipitation on the day of the incident (see Gill v Bk Bryant Ave. HDFC., Inc., 196 NYS3d at 449;[FN3] Bodoff v Cedarhurst Park Corp., 213 AD3d 802, 803 [2d Dept 2023]; Arghittu-Atmekjian v TJX Cos., Inc., 193 AD3d at 1396; Edmund-Hunter v Toussie, 190 AD3d at 947); "a negligible amount of snow" fell within three hours of the fall (Patricola v General Motors Corp., 170 AD3d at 1507); or there was an accumulation of 0.04 an inch on the day of the incident (see Haraburda v City of New York, 168 AD3d at 486).
We acknowledge that — with the exception of Anson v Monticello Raceway Mgt., Inc. (217 AD3d at 1231) and Vosper v Fives 160th, LLC (110 AD3d at 544) — the majority of these cases and other cases like them involve the accumulation of snow or sleet as opposed to freezing rain or freezing drizzle. However, this only serves to further undermine the reasons for continuing the application of the delay imposed by the storm in progress doctrine, inasmuch as 0.02 of an inch of total daily precipitation does not present a situation where such precipitation is "re-covering [walking surfaces] as fast as they are cleaned, thus rendering the effort fruitless" (Anson v Monticello Raceway Mgt., Inc., 217 at 1231, quoting Powell v MLG Hillside Assoc., 290 AD2d at 345; see Scheuer v State of New York, 198 AD3d at 1227). This is particularly true given the range in temperatures for the day of the incident — which Altschule opined was 33 degrees to 51 degrees — and, although the statement from the National Weather Service for the morning of the incident indicated that patchy freezing drizzle and black ice was "possible" early in the morning and pedestrians should be aware of that "possibility[*5]" while traveling, such statement was applicable for at least 73 different locations, spanning from the southern Adirondacks through eastern Berkshire County in Massachusetts, and is insufficient proof of this ongoing condition at the subject location. Despite the fact that both experts agreed that freezing drizzle or freezing rain could create slippery conditions, so too could trace accumulations of snow which had resulted in falls that were also insufficient as a matter of law to support the continued pause of the storm in progress doctrine in the cases referenced above (see Powell v MLG Hillside Assoc., 290 AD2d at 345-346; see also Bodoff v Cedarhurst Park Corp., 213 AD3d at 803; Arghittu-Atmekjian v TJX Cos., Inc., 193 AD3d at 1396; Edmund-Hunter v Toussie, 190 AD3d at 947). To that end, the cases cited by the dissent either conflict with our precedent in this Department, particularly our recent decision in Anson v Monticello Raceway Mgt., Inc. (compare 217 AD3d at 1232, with Murphy v Goldman Sachs Group, 198 AD3d 511 [1st Dept 2021]) or are factually distinguishable.[FN4] Based on the foregoing and our review of the record, in this case a trier of fact should be charged with determining whether there was a lull or ongoing storm in progress that supports the continued delay of defendants' obligation to remedy their premises from hazardous conditions (see Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1232; Vosper v Fives 160th, LLC, 110 AD3d at 544; see also Gill v Bk Bryant Ave. HDFC., Inc., 196 NYS3d at 449, Powell v MLG Hillside Assoc., 290 AD2d at 346).
Inasmuch as defendants did not establish that there was a storm in progress, plaintiffs did not need to demonstrate that the ice was preexisting (see generally Marra v Zaichenko, 214 AD3d 1165, 1166 [3d Dept 2023]). To that end, defendants also failed to establish as a matter of law the absence of a hazardous icy condition or whether they had notice and a reasonable period of time to correct such condition. We reach this conclusion particularly in light of the reply affidavit from Altschule, who "generally agree[d]" with plaintiffs' opposing meteorologist that ice may have formed as early as approximately 14 hours prior to the incident — therefore both acknowledging the presence of ice and confirming the maximum duration that it may have existed (see Telesco v Smith, 200 AD3d at 1144; Baker v Cayea, 74 AD3d 1619, 1620 [3d Dept 2010]). Thus, we reverse the finding of summary judgment in favor of One Fairchild Square, Inc., and reinstate the complaint against that defendant.
We do not, however, reinstate the complaint against MJ Properties Realty, LLC, which also moved for summary judgment on the additional ground that it was not the property management company responsible for the location where Gagne's fall took place. Plaintiffs do not refute this argument, but rather had separately moved to amend the complaint to substitute the correct property management company; in light of its decision [*6]applying the storm in progress doctrine, Supreme Court denied plaintiffs' motion as moot. Accordingly, MJ Properties Realty, LLC is entitled to summary judgment on the ground that it owed no duty to plaintiffs. As for plaintiffs' motion to amend the complaint based on the relation back doctrine to add the correct property management company, defendants' counsel conceded at oral argument that this motion should be remitted to Supreme Court for determination, and we agree (see McCarthy v Town of Massena, N.Y. [Massena Mem. Hosp.], 218 AD3d 1082, 1091 [3d Dept 2023]). We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Reynolds Fitzgerald and Ceresia, JJ., concur.
Lynch, J.P. (dissenting).
We respectfully dissent and would affirm Supreme Court's award of summary judgment to defendants under the storm in progress doctrine. Under that doctrine, a landowner "will not be held liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter" (Sherman v New York State Thruway Auth., 27 NY3d 1019, 1020-1021 [2016] [internal quotation marks and citation omitted]; accord Anson v Monticello Raceway Mgt., Inc., 217 AD3d 1231, 1231 [3d Dept 2023]; Telesco v Smith, 200 AD3d 1140, 1141 [3d Dept 2021]). A "major winter storm" need not occur for the doctrine to apply (Zima v North Colonie Cent. School Dist., 225 AD2d 993, 994 [3d Dept 1996]). The existence of an ongoing hazardous weather event — including freezing rain and/or drizzle — is sufficient to trigger the doctrine (see Murphy v Goldman Sachs Group, Inc., 198 AD3d 511, 512 [1st Dept 2021]; Mitchell v Davidson, 164 AD3d 1160, 1160 [1st Dept 2018]; Micheler v Gush, 256 AD2d 1051, 1052 [3d Dept 1998]; Zima v North Colonie Cent. School Dist., 225 AD2d at 994).
On December 19, 2017, "five to ten minutes" before 7:28 a.m., plaintiff Magen Gagne slipped and fell on what she described in her deposition as "black ice" located on a walkway leading into the building where she worked. Gagne described the weather as "foggy" with a "light drizzle" when she left her home around 6:30 a.m. She drove to work with her windshield wipers on, but could not recall the precise conditions when she arrived, generally describing the weather as "still kind of gloomy." She did not see the ice before she fell.
The parties' expert affidavits are essentially in agreement and confirm that a hazardous weather event was ongoing at the time of the incident. Upon reviewing weather data from the incident location, Howard Altschule — defendants' expert meteorologist — explained that "[a] winter storm affected the incident location" on December 18 and 19, 2017, causing "snow, freezing rain, freezing drizzle, and rain to fall and accumulate." Altschule noted that intermittent periods of light snow fell during the early morning hours into the afternoon on December 18, stopping around 3:[*7]50 p.m. This was followed by "periods of freezing drizzle or light freezing rain" throughout the evening. At 6:51 p.m., the National Weather Service in Albany issued a Special Weather Statement for the incident location and surrounding areas, warning that, "[e]ven though precipitation w[ould] be light, a light glaze of ice accretion [wa]s possible on some surfaces through the remainder of the evening hours," which could lead to "locally slick travel, especially on untreated surfaces." According to Altschule, the temperature ranged from 16 to 33 degrees Fahrenheit on December 18, and approximately 0.3 of an inch of snow and a coating of new ice/glaze less than 0.1 of an inch accumulated.
On December 19, 2017, the National Weather Service issued another Special Weather Statement at 4:10 a.m., warning of "[p]atchy light freezing drizzle . . . moving across the[ ] area[ ] through daybreak," which, when combined with near freezing temperatures, would "lead to areas of black ice on untreated surfaces." The threat for black ice was "expected to diminish after 9 a.m." The actual conditions on that date were consistent with this warning, with Altschule explaining that "occasional freezing drizzle" fell between 12:00 a.m. and 12:05a.m.; 12:54 a.m. and 1:03 a.m.; 4:21 a.m. and 5:53 a.m.; 6:27 a.m. and 6:49 a.m.; 7:01 a.m. and 7:28 a.m.; and 7:41 a.m. and 8:45 a.m. According to Altschule, the air temperature ranged from 33 to 51 degrees Fahrenheit on December 19. By 7:30 a.m. the temperature was 34 degrees and "a coating of new ice/glaze less than [0.1] of an inch thick was present on the ground as a result of the precipitation that stopped only two minutes prior." Altschule estimated that the amount of liquid equivalent precipitation that accumulated on that date was .04 of an inch. He ultimately opined that "[t]he same winter storm that caused precipitation to fall" on December 18 and the morning of December 19 "was still in progress at the time of the incident despite a lull in the precipitation that was occurring."[FN5]
Plaintiffs' expert meteorologist, Steven Roberts, generally agreed with Altschule's assessments about the weather conditions before, during and after the subject incident. In that respect, he agreed that a light freezing rain and/or drizzle fell intermittently between approximately 5:40 p.m. and 11:00 p.m. on December 18, 2017. Such precipitation continued into the morning of December 19, 2017, with light freezing drizzle falling intermittently between 12:00 a.m. and 1:30 a.m., followed by freezing rain between 4:20 a.m. and 6:50 a.m. According to Roberts, both freezing rain and freezing drizzle fell between 7:00 a.m. and 7:30 a.m. Noting the two National Weather Service advisories warning of the potential for black ice, Roberts ultimately opined that any areas of black ice present at the time of the incident were "consistent with the freezing rain and freezing drizzle that fell between approximately 5:40 p.m. . . . on December 18, 2017 and [*8]7:30 [a.m.] on December 19, 2017." Roberts opined that the total liquid equivalent precipitation accumulation from the weather event was "between a trace (less than 0.01 inch) and 0.02 inch" and "the maximum time period that ice could have been present from this event was approximately 14 hours prior to the incident."
The operative point here is that, after analyzing the pertinent weather data, both experts agreed that freezing rain and/or drizzle fell intermittently over the course of approximately six hours the evening before the subject incident, continued to fall intermittently during the morning thereof, and was falling at the actual time of Gagne's accident. On this record, it is our view that Supreme Court correctly concluded that defendants established the existence of an ongoing hazardous weather event at the time of Gagne's fall, entitling defendants to summary judgment as a matter of law under the storm in progress doctrine (see Micheler v Gush, 256 AD2d at 1052; Zima v North Colonie Cent. School Dist., 225 AD2d at 994; see also Convertini v Stewart's Ice Cream Co., 295 AD2d 782, 783 [3d Dept 2002]). That only trace amounts of precipitation fell during this period does not require a different outcome for the precipitation consisted of freezing rain — creating the potential for black ice in even minor amounts — rather than snow (see Prince v New York City Hous. Auth., 302 AD2d 285, 285 [1st Dept 2003] [affirming grant of summary judgment to the defendant "where the meteorological evidence established that 'trace' precipitation in the form of freezing rain and ice pellets, accompanied by heavy fog and widespread glaze, began falling in the region . . . two hours before (the) plaintiff's fall (and) did not end until (after the plaintiff's fall)"]; compare Arghittu-Atmekjian v TJX Cos., Inc., 193 AD3d 1395, 1396-1397 [4th Dept 2021]; Edmund-Hunter v Toussie, 190 AD3d 946, 947 [2d Dept 2021]; Haraburda v City of New York, 168 AD3d 485, 486 [1st Dept 2019]; Powell v MLG Hillside Assoc., 290 AD2d 345, 346 [1st Dept 2002]). Pertinent in that regard, Altschule explained that even a trace amount of liquid equivalent precipitation resulting from freezing rain and/or drizzle "c[ould] cause slippery conditions to develop on exposed, untreated, and undisturbed surfaces as the liquid rain and/or water droplets freeze on contact with below freezing surfaces." It is also significant that the National Weather Service emphasized the potential for black ice even with the light precipitation expected. As both experts agreed that, in the case of freezing rain, even minimal accumulations are significant, a storm was in progress at the time of the accident validating Supreme Court's dismissal of the case. Moreover, plaintiffs failed to demonstrate that Gagne slipped on ice that existed before the underlying storm began.
Powers, J., concurs.
ORDERED that the order is modified, on the law, with costs, by reversing so much thereof as (1) granted the motion of [*9]defendant One Fairchild Square, Inc. for summary judgment dismissing the complaint against it, and (2) denied plaintiffs' motion as moot; One Fairchild Square, Inc.'s motion denied; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Both sets of data were the total daily and total hourly climatological observations from the Albany International Airport.

Footnote 2: A third set of meteorological data from the weather station located in Clifton Park — where the incident occurred — indicated that the total daily observations on the day of the incident was just 0.01 of an inch of precipitation. The record did not include the total hourly observations for this location.

Footnote 3: Although the decision in Gill did not reference the specific accumulations of precipitation or offer additional facts, the duly filed submissions are available for our review. In Gill, there had been a winter storm the day before the fall and continued precipitation the morning of the fall (see NY St Cts Elec Filing [NYSCEF] Doc No. 51, response statement of material facts, exhibit B, Forensic Weather Investigation Report at 9, 13-14, in Gill v Bk Bryant Ave. HDFC., Inc., Sup Ct, Bronx County, index No. 33960/2018E, affd 196 NYS3d 449 [1st Dept 2023]). The defendants contended that the storm continued into the morning of the incident to delay their duty to clean the prior day's precipitation, which the plaintiff opposed by relying on a joint expert meteorologist report — also from Altschule — that concluded there were only "trace" amounts of precipitation the entire day of the incident, including in the morning preceding the fall (id.).The First Department found this to be sufficient to "raise[ ] an issue of fact as to whether [the plaintiff's] accident occurred while a storm was in progress or whether there was a significant lull in the storm" (Gill v Bk Bryant Ave. HDFC., Inc., 196 NYS3d at 449).

Footnote 4: Reviewing the duly filed submissions in each matter demonstrates the material dissimilarities with our case. For instance, in Mitchell v Davidson (164 AD3d 1160, 1160 [1st Dept 2018]), the defendant's expert — again Altschule — concluded that there was a storm in progress resulting in approximately 0.1 of an inch of ice on exposed surfaces which caused "treacherous and dangerous" weather conditions and contributed to a 20-car accident (see NY St Cts Elec Filing [NYSCEF] Doc No. 23, exhibit H ¶ 15, in Mitchell v Davidson, Sup Ct, Bronx County, index No. 21468/2015E, affd 164 AD3d 1160). However, the precipitation in our case was just 0.02 of an inch throughout the day, was not specifically ice and the record does not indicate that such precipitation contributed to any widespread traffic disruptions. Indeed, Gagne's testimony undermined that notation, as she recalled that she was able to drive approximately an hour to work that day. Additionally, the nature of the alleged defect was a patch of black ice, with a possible diameter of four inches, and not a widespread icy glaze. Whereas in Prince v New York City Hous. Auth. (302 AD2d 285, 285 [1st Dept 2003]) — where the storm in progress was significantly more destructive, involving "freezing rain and ice pellets, accompanied by heavy fog and widespread glaze . . . [and] caus[ing] numerous bridge and roadway closures, public transit interruptions, accidents and injuries" (id.). Moreover, in Micheler v Gush (256 AD2d 1051, 1052 [3d Dept 1998]) and Zima v North Colonie Cent. School Dist. (225 AD2d 993 [3d Dept 1996]), unlike here, both cases included a fact witness at the scene who testified that there was precipitation occurring at the time of the incident (compare Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1233). Each case's decision also offered limited particulars as to the precipitation and its impact, and each was subsequently negatively distinguished by Powell v MLG Hillside Assoc. (290 AD2d 346) — the seminal case limiting the application of the storm in progress doctrine where appreciable precipitation had ceased.

Footnote 5: Altschule was under the impression that the incident occurred at 7:30 a.m. on December 19, 2017, rather than "five to ten minutes" before 7:28 a.m. as testified to by Gagne. As such, based upon the weather data set forth in his affidavit, there was no lull in precipitation occurring at the time of the incident.