Rita M. Citta, Appellant, *v.* State of New York, Respondent.
(Claim No. 36918.)

Fourth Department, December 3, 1970.

*Miserendino, Krull & Foley* (*David C. Fielding* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Winifred C. Stanley* and *Ruth Kessler Toch* of counsel), for respondent.

*Per Curiam.* Claimant appeals from a judgment dismissing her claim for damages she sustained because of the alleged negligence of the State in maintaining a bridge. Claimant while driving on a public highway about 10 o'clock in the evening skidded on ice on the bridge causing property damage and personal injuries. The alleged negligence of the State is based on its failure to sand the bridge after having received actual or constructive notice of the icy condition thereon. (Cf. *Cohen* v. *City of New York,* 204 N. Y. 424, 426–427.)

The claim was dismissed following trial in 1962. We reversed and granted a new trial (30 A D 2d 636). Upon the new trial (before another Judge of the Court of Claims) the transcript of testimony received at the first trial by stipulation of the parties was received in evidence. Claimant offered no additional proof

but the State called a maintenance man (Pfleuger) employed by it at the time of the accident, who had not been a witness at the first trial.

The factual issue as to whether or not the State received actual notice of the icy condition of the bridge and thereafter delayed for several hours before remedying the condition was presented at the first trial. A State trooper testified that at 7:40 in the evening (after having driven over the bridge) he telephoned Pfleuger and told him that the bridge was icy and needed sanding. There was documentary proof, which in part substantiated this testimony, in the form of the log kept by the State Police which showed that the call had been made at the stated hour with the additional notation "Route 5 in need of sanding. Advised that crew would be out." The Judge who presided at the first trial, apparently believed the testimony of the trooper and found as a fact " That at approximately 7:40 P.M. Trooper Carr telephoned Mr. Pfleuger and informed him of the dangerous condition of the bridge " and further found that Pfleuger lived less than one mile from the bridge.

Pfleuger's testimony at the second trial is most unsatisfactory. He had little or no independent recollection of the day and evening in question but relied on a time sheet kept by him and his wife. On the subject of the crucial telephone call made by Trooper Carr, Pfleuger vacillated between an unqualified denial that he received the call to an admission that he had no present recollection of having received it. It was his version that he received a call from a local police department and thereafter followed his usual route of 25 or more miles which brought him to the bridge " sometime between 8:00 and (midnight)  *  *  * because that's the last place that I'm instructed to do." The accident, as stated, happened about 10:00 P.M. but Pfleuger had no recollection of having heard about an accident that night on the bridge.

In this posture of the proof on this factual issue, the Judge, who presided at the second trial, found that the call was made by Trooper Carr and that his message to Pfleuger "was as shown on the police log that Route 5 needed sanding." It follows that the court in substance found that the trooper had never told Pfleuger that the bridge was icy and needed sanding but only that Route 5 did. Thus, on this crucial issue we are confronted with the finding of the Judge, who heard the trooper testify, that he believed the witness while the second Judge, who took the testimony from the cold record, found the testimony to be false.

We reverse the factual finding so made following the second trial and adopt the finding made following the first trial. It follows that the delay of the State for a period of 2½ to 4 hours in sanding the bridge after having received actual notice of its icy condition constituted negligence.

The judgment should be reversed and the action remitted to the Court of Claims for an assessment of damages.

DEL VECCHIO and WITMER, JJ. (dissenting). This action was commenced to recover damages for personal injuries and property damages sustained by claimant at about 10:00 P.M. on April 8, 1958 when an automobile owned and operated by her skidded by reason of the slippery condition of Irving Bridge on Route 5 and 20, a four-lane highway.

Four and one-half years later in September, 1962 the case was tried in the Court of Claims. Claimant contended that the State was negligent in failing to sand the bridge after receiving notice at 7:40 P.M. of its slippery condition. In dismissing the claim the Trial Judge found that claimant had failed to prove her freedom from contributory negligence and failed to prove any negligence on the part of the State. We reversed, 4 to 1, and granted a new trial (30 A D 2d 636) on the ground that the dismissal was against the weight of the evidence, and we noted particularly that the State's highway maintenance foreman for the particular area was not available to testify.

The case was retried before another Judge of the Court of Claims in September, 1968, 10½ years after the accident. The parties stipulated the original trial record into evidence with minor exceptions, and claimant rested thereon. The State called Mr. Pfleuger, an employee of the State Department of Public Works since 1926 and its maintenance foreman for this area, Mrs. Pfleuger, Mr. Pecoraro, Police Chief of Silver Creek, and Mr. Dispence, an employee of the State Highway Department in Erie County and put into evidence Pfleuger's time sheet (Exhibit A) and the Silver Creek police log for April 8, 1958 (Exhibit C). In a carefully considered opinion the Trial Judge reviewed the evidence and the applicable law, found that the State had met the standard of reasonable care in maintenance of its highway and dismissed the claim. This appeal is from the judgment of dismissal.

The majority have made a finding that the delay of the State in sanding the bridge after notice of its slippery condition constituted negligence, and have voted to reverse the judgment, direct judgment for claimant and remit for assessment of damages. In our opinion such action exceeds the power of this court and is contrary to law.

The issues presented on this appeal are clear factual questions of credibility and weight of evidence. Only the trier of the facts is endowed with the right to pass on the conflicting evidence, as well as the credibility of witnesses (*Swensson* v. *New York, Albany Despatch Co.*, 309 N. Y. 497, 505).

"We should not disturb the findings of the court as the trier of the facts unless it is obvious that its conclusions could not be reached under any fair interpretation of the evidence." (*Billington* v. *State of New York*, 33 A D 2d 822, 823.) In *Tyrell* v. *State of New York* (6 A D 2d 958, 959) it was written, "The court as the trier of facts has determined that the claimant has not met this burden. Certain it is, that, when there is a decision for the defendant by the trier of the facts in an action of this sort, the court is not justified in setting it aside as against the weight of evidence unless it can be plainly seen that the preponderance in favor of the plaintiff is so great that the trier of facts could not have reached the conclusion upon any fair interpretation of the evidence." The courts have consistently so held (*Harrow* v. *State of New York*, 21 A D 2d 571, 572, affd. 17 N Y 2d 619; *Roberts* v. *State of New York*, 34 A D 2d 1071; *Nachbar* v. *New York State Thruway Auth.*, 33 A D 2d 948, 949; *Guyotte* v. *State of New York*, 22 A D 2d 975; *Rapant* v. *Ogsbury*, 279 App. Div. 298).

Where "a preponderance of the credible evidence favors the determination made in the Court of Claims", its decision may not be reversed by the Appellate Division (*McCauley* v. *State of New York*, 8 N Y 2d 938, 940; to like effect, see *Kenyon* v. *State of New York*, 18 N Y 2d 765; *Eason* v. *State of New York*, 280 App. Div. 358).

When examined in the light of these rules the proof submitted does not warrant a reversal of the findings made by the Trial Judge. To demonstrate this, some review should be made of the evidence and the findings made by him.

By the third week of March, 1958 the weather had turned comparatively warm and continued so and clear until April 5, 1958. In the preceding 10 years sanding of roads in this area had been done in April on only three occasions. With such turn of weather, the special standby sanding crew which the State had during the winter was disbanded late in March. From that time on it was the duty of the highway foreman for the area (Mr. Pfleuger) to tend to the State roads.

Irving Bridge is half in Erie County and half in Cattaraugus County. Pfleuger's territory was from the center of this bridge westerly for about seven miles, and, in all, he had to maintain 29 miles of State roads in that area. Both Pfleuger and the fore-

man in charge of the area in Erie County to the east of the bridge would cross the bridge and turn around, thereby clearing snow from it and sanding it if need be, in tending their respective "beats".

In Pfleuger's territory he had four particularly dangerous intersections regulated by stop lights, and he had some large hills and small bridges to attend, besides Irving Bridge. In the absence of special instructions he had an established route to follow when sanding was required. He was instructed to start from where he kept his truck and a mixture of sand and salt at West Irving, which was one mile west of Irving Bridge, and go westerly two miles through Silver Creek and four miles further west to the west end of his territory, sanding all of the "dangerous lights" and the large hills and small bridges en route on Route 5 and 20, and then return to West Irving and continue east one mile to Irving Bridge, the eastern boundary of his "beat", as his last stop. This was the pattern which he had followed regularly over the years.

Pfleuger had no independent recollection of April 8, 1958 and claimant's accident. His memory was refreshed, however, by reference to his time sheet for this period, which he had made and filed with the State in regular course, as a basis for his compensation. He testified that on April 8, 1958 he worked with his crew from 8:00 A.M. to 4:30 P.M., patching holes in the roads and doing general maintenance work, and that he had no duty to do additional work on the highway after 4:30 P.M. unless called to do so. The testimony of State Engineer Forness, who was in charge of maintenance of highways, supported this evidence. The proof shows that there was no ice on the bridge at 5:00 P.M. Later the weather became misty, the highway wet and the temperature was dropping. State Trooper Carr testified that he had an independent memory of calling Pfleuger that evening and telling him that the bridge needed sanding. His official entry on the police blotter at 7:40 P.M., however, reads: "Route 5 in need of sanding. Advised that crew would be out." It is significant that there is nothing on the blotter with respect to the condition of the bridge, only that Route 5 needed sanding. If only the bridge needed sanding, there would have been no reason for a log entry that Route 5 needed sanding. Records of an event are to be accepted in preference to a witness' oral recollection thereof four and one-half years later. In *Burdick* v. *Fuller* (199 App. Div. 94, 98) the court said: "The Chinese have a proverb that ' the palest ink is better than the most retentive memory.'" Pfleuger did not deny that he received a call

from the State Police but had no recollection of it upon the trial. He did testify that at 8:00 P.M. the Silver Creek police notified him that " the hills are getting bad and the road conditions getting bad around Silver Creek " and that they were becoming slippery. The police log entry reads, " Contact State Highway Dept. Roads 5 and 20 becoming very slippery." This evidence of the condition of the road was corroborated by Police Chief Pecoraro.

The proof establishes that the weather conditions on the day of the accident were unusual and that the State could not be charged with anticipating the slippery conditions. Pfleuger testified that during the interval of 2 hours and 20 minutes between the notification and the occurrence of the accident he observed that it was snowing and that the temperature was low, that he notified his crew, went to his garage, got his truck, loaded it with sanding mixture and proceeded to sand in accordance with his standing orders. He used up his first load on his westerly run, reloaded and proceeded east to the Irving Bridge, arriving there at about 10:30 P.M., approximately one-half hour after claimant's accident.

It should also be noted that the evidence by claimant and the testimony by Trooper Carr that only the bridge was slippery is incredible in light of Pfleuger's testimony, corroborated by log entries in two separate and distinct police blotters and the testimony of Mr. Forness and Police Chief Pecoraro, for certainly Pfleuger would not have sanded all the roads of his " beat " that night if they had not needed it. Pfleuger testified that if he had been advised that only the bridge needed sanding, he could have been there and sanded it within one hour. He added, however, that all the dangerous spots on his route needed sanding and, in his words, " If I would have went from my home and went to Irving and then something would have happened up above where I'm supposed to go * * * I'd a been doing something that I wasn't supposed to do."

He implies, of course, and correctly, that then he really would have been in trouble.

The majority rule now as though this court had reversed and mandated assessment of damages after the first trial. That, of course, is not the fact; at that time the case was sent back for a new trial, and that has been had. It is clear that the evidence as it developed on the second trial was much different from that of the first trial, in that it contained the testimony of Pfleuger and the Police Chief of Silver Creek as well as Exhibits A and C which support the findings favorable to defendant.

No basis for State liability is claimed on this trial, nor found by the majority of this court, except as above recited, and none exists (see *Hooker* v. *Town of Hanover*, 247 App. Div. 623).

Upon the facts in this case, and particularly in light of the overwhelming proof that Pfleuger was advised that Route 5 needed sanding, we conclude that the determination by the Court of Claims that the period between the telephone call of 7:40 P.M. and the accident which occurred at about 10:00 P.M. was too short to impose liability on the State for failure to sand the bridge before the happening of the accident, may not be disturbed (*Cohen* v. *City of New York*, 204 N. Y. 424; *Acorn* v. *State of New York*, 286 App. Div. 940). The mere presence of ice on the bridge caused by action of the elements and the fact that claimant's vehicle skidded do not establish negligence on the part of the State (*Quigley* v. *State of New York*, 281 App. Div. 185, affd. 308 N. Y. 846; *La Tournerie* v. *State of New York*, 1 A D 2d 734; *Hooker* v. *Town of Hanover, supra*).

In view of the foregoing, the court has no right to reverse and direct a verdict for claimant; and we are in duty bound to affirm.

Accordingly, the judgment appealed from should be affirmed upon the opinion of Judge COLEMAN.

GOLDMAN, P. J., GABRIELLI and BASTOW, JJ., concur in *Per Curiam* opinion; DEL VECCHIO and WITMER, JJ., dissent and vote to affirm the judgment in opinion.

Judgment reversed on the law and facts, with costs, and action remitted to the Court of Claims for an assessment of damages.