■ CLAUDE SMITH et al., Appellants, v STATE OF NEW YORK, Respondent. [688 NYS2d 774] —Peters, J. Appeal from a judgment of the Court of Claims (McNamara, J.), entered December 3, 1997, upon a decision of the court in favor of the State.

Claimant Claude Smith (hereinafter Smith) slipped and fell on January 15, 1996 at approximately 9:00 A.M. while approaching building 10 of the Oswald D. Heck Developmental Center (hereinafter the facility) in Schenectady County. At the time, Smith was carrying his infant daughter to her day-care program located inside the facility. As a result of the fall, Smith and his wife, derivatively, filed a claim against the State alleging that it failed to maintain the walkway in a safe condition.

At trial, Phillip Falconer, a meteorologist, testified on behalf of claimants concerning snowfall and temperature variations over the three days preceding the accident. Based upon the sequence of temperatures on the morning of the incident, Falconer testified that the sidewalks would have started to freeze at approximately 6:00 A.M. and would have been frozen by the time of the fall.

Claimant testified that it was not until his fall that he noticed a patch of black ice; otherwise the walkway appeared clear as he approached. John Mangione, plant superintendent, testified that the subject walkway was given priority for snow and ice removal since it was used by the doctors, day-care staff and others to gain entrance to their offices earlier in the morning than other areas of the facility. The groundskeeping staff was responsible for the removal of snow and ice on these walkways between 7:00 A.M. and 3:30 P.M, further inspected by Mangione, Lloyd Schmidt, a senior groundskeeper, or another. Security staff, operating patrol vehicles, thereafter inspected the exterior of the facility for snow and ice 24 hours a day. Both Mangione and Schmidt testified that members of the grounds crew cleared the subject walkway from approximately 5:00 P.M. to 7:00 P.M. on the evening of January 14, 1996. Notwithstanding the public holiday falling on the next day, Mangione explained that while members of the grounds crew

were given the day off, they were subject to being called in by security staff if snow accumulations or icy conditions needed to be addressed.

Toni Altieri, a nurse administrator at the facility, testified that she used the subject walkway when she reported to work shortly before 7:00 A.M. on January 15, 1996 without any difficulty. She further testified that she did not receive any complaints regarding its condition from any other nurse who used the walkway prior to claimant's fall. Joseph Conto, a security guard on duty that morning, testified that he inspected the walkway at approximately 8:00 A.M., noticed that it was "shoveled and clear", and had received no complaints regarding its condition. Upon this cumulative testimony, the Court of Claims found that the State did not have actual or constructive notice of the defective condition and dismissed the claim. Upon entry of judgment, this appeal ensued.

Addressing the contention, not raised before the Court of Claims, that the State created the dangerous condition through its snow and ice removal procedures, we note that since no new facts were raised but only a new argument of law on appeal, the issue is properly before us (see, Larson v Albany Med. Ctr., 252 AD2d 936, 939). Nonetheless, as the record evidence concerning the adequacy of the State's snow removal procedures prior to and on the date of the accident detailed that snow and ice had been removed after the storm ended on January 13, 1996 and no complaints had ever been received regarding the existence of a dangerous condition on such walkway as a result of either temperature fluctuations or the combination of such with the snow and ice removal procedures in place, there exists no merit to this newly raised theory.

While the State clearly owes a duty to claimants and others entering upon its property to maintain it in a reasonably safe condition under the circumstances, it is not obligated to insure against every injury which may occur (see, Boettcher v State of New York, 256 AD2d 882). Tempered with "an awareness of the realities of the problems caused by winter weather" (Marcellus v Littauer Hosp. Assn., 145 AD2d 680, 681), it is well settled that liability may be imposed upon the State if it can be shown that it had actual or constructive notice of the hazardous condition that caused the fall (see, Piacquadio v Recine Realty Corp., 84 NY2d 967). Since a " 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition" (id., at 968-969), we find that the Court of Claims correctly concluded that the State did not have either actual or construc-

tive notice. Contentions alleging actual notice are belied by Smith's admission that the black ice was not apparent to him prior to the fall—observations buttressed by the testimony of Mangione, Conto and Altieri (*see, Gordon v American Museum of Natural History*, 67 NY2d 836). Similarly unavailing are contentions alleging constructive notice due to the failure to proffer sufficient proof that the walkway had been prone to icing following similar circumstances (*see, Piacquadio v Recine Realty Corp., supra*, at 969).

Mercure, J. P., Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed, without costs.