■ CAROL SPANNAGEL, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 100183.) [748 NYS2d 421] —Cardona, P.J. Appeal from a judgment of the Court of Claims (Collins, J.), entered September 28, 2001, upon a decision of the court following a bifurcated trial in favor of defendant on the issue of liability.

In April 1999, claimant filed a notice of claim against defendant seeking to recover for injuries sustained when she slipped and fell while working as a certified nurse's aide in the medical unit of the Coxsackie Correctional Facility in Greene County. A trial on the issue of liability consisted of claimant's presentation of three witnesses: herself, Catherine Duncan, a supervising housekeeper for the correctional facility, and Correction Officer Harry Wilson, Jr. Claimant testified that on March 9, 1999, while on duty, she was speaking with Wilson at his station when a bell went off indicating that a patient needed attention. She left that station, hurried down the hall, and saw a red light in an adjacent staff lounge signifying a possible emergency. She walked briskly through the lounge and, as she proceeded across the room, peripherally saw an inmate with a mop and mop bucket. Claimant admitted that she was not looking at the floor as she rushed through the lounge and that, "by the time [she] realized the shininess of the floor it was still wet, too late, [and she] was down on it."

Duncan testified that she heard claimant's cries and went into the staff lounge where she saw claimant on the floor being assisted by Wilson. She also observed an inmate with his mop

and big silver bucket. Being the supervisor, Duncan testified that the inmate performed a set daily routine of janitorial services, including mopping the floor of the staff lounge. Duncan specified that facility procedures require that safety cones be placed in the middle of the doorway at the entrance to a room being mopped and, although she noticed a cone in the hallway near a different room, no cones were visible in the doorway of the staff lounge where claimant was injured. Duncan testified that the floor of the lounge "was definitely wet because of the dark blue tile on the floor and when it's mopped it looks really, really shiny * * * with the dark blue tile, you can definitely see that the floor is wet."

Wilson stated that, after claimant left his station, he heard something hit the floor and a loud yell. When he went to investigate, he saw claimant on the floor and, after he knelt down near her, he noticed that the floor "was slightly damp, wet." Wilson testified that he did not see a safety cone in the lounge doorway. Although the incident report that Wilson submitted after the accident indicated that he saw a safety cone in the hallway outside the lounge next to a wall, the report did not state that it was placed in the lounge entranceway.

After the close of evidence, the Court of Claims concluded that the safety cone was properly placed and, alternatively, found that, regardless of the safety cone issue, the wet floor was an open and obvious hazard and, as such, defendant had no duty to warn claimant. Consequently, the Court of Claims dismissed the claim prompting this appeal.

Initially, we agree with claimant's argument that the Court of Claims' finding that the safety cone was properly placed is unsupported in this record. Duncan's testimony that the correct procedure for placement of safety cones in the middle of the doorway of rooms where facility floors were being washed was uncontradicted. Furthermore, while there was some evidence indicating that a safety cone was located in the hallway outside the staff lounge, there was no proof supporting a finding that a cone was properly placed in the middle of the lounge room entranceway consistent with Duncan's description of the standard safety procedure. Therefore, we do not agree with the Court of Claims' finding as to this issue (see *Prashant Enters. v State of New York*, 206 AD2d 729, 731).

Next, we are unpersuaded that the claim must be dismissed, irrespective of the placement of the safety cones, because the wet floor constituted an "open and obvious hazard." It is true that a landowner's duty to warn persons of dangerous conditions does not generally encompass situations where the condi-

tion is in plain view and readily observable to someone employing the reasonable use of his or her senses (*see Smith v Zink,* 274 AD2d 885; *Thornhill v Toys "R" Us NYTEX,* 183 AD2d 1071, 1072). However, we must also consider "the rule that landowners, who have or should have reason to expect that persons will find it necessary to encounter the obvious danger, owe a duty of reasonable care to either warn such persons of the danger or to take other reasonable steps to protect them from it" (*Comeau v Wray,* 241 AD2d 602, 603). Specifically, the duty to warn against known or obvious dangers arises where the landowner has reason to expect or anticipate that a person's "attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it" (Restatement [Second] of Torts § 343A [1], Comment *f* ).

We conclude that the proof clearly supports application of this rule herein and establishes that defendant breached its duty to warn and said breach was a proximate cause of claimant's injuries. In doing so, we exercise our authority in nonjury cases to " 'weigh the probative force of the conflicting evidence and the relative strength of conflicting inferences that may be drawn therefrom, and then grant the judgment which upon the evidence should have been granted' " (*Prashant Enters. v State of New York, supra* at 731, quoting *Kandrach v State of New York,* 188 AD2d 910, 912-913). The undisputed proof established that mopping of the floor was a daily activity and staff, including claimant, were aware of the fact that safety cones were required to be placed in the entranceways of rooms being mopped. Additionally, the subject accident took place in the medical unit of the facility where the testimony established that emergency calls from persons in distress were a common occurrence and quick responses were expected and called for by claimant's training. Given this proof, we find that defendant did have a duty to warn as a matter of law (*see Comeau v Wray, supra; see also Smith v Zink, supra; Stern v Ofori-Okai,* 246 AD2d 807). We further find that the proof supports an apportionment of 50% liability to defendant and 50% to claimant. Accordingly, we remit the matter to the Court of Claims for a trial on the issue of claimant's damages.

Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, with costs, liability is apportioned 50% against defendant and 50% against claimant and matter remitted to the Court of Claims for a determination of claimant's damages.