Yehl v State of New York (2025 NY Slip Op 51664(U))

[*1]

Yehl v State of New York

2025 NY Slip Op 51664(U)

Decided on July 28, 2025

Court Of Claims

Mejias-Glover, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 28, 2025
Court of Claims

Loma Yehl, Claimant,

against
The State of New York, Defendant.

Claim No. 138635

FOR CLAIMANT:
FINKELSTEIN & PARTNERS
By: Christopher R. Camastro, Esq.
FOR DEFENDANT: 
HON. LETITIA JAMES, NYS ATTORNEY GENERAL
By: LaDonna S. Sandford., Esq. Assistant Attorney General

Linda K. Mejias-Glover, J.

A trial on the sole issue of liability was conducted before this Court on May 13, 2025. Claimant, Loma Yehl (hereinafter "Claimant") testified on her own behalf and called Roger Brown to testify, and the Defendant called Jennifer Sylvestri to testify on its behalf.
The Claim, filed with the Clerk of the Court on January 11, 2023, alleges that on November 28, 2021, in Bear Mountain State Park near Hessian Lake, Claimant stepped into a hole located in a grassy area adjacent to Hessian Drive—approximately 62 feet from Route 9W, 30 feet and 2 inches west of the Bear Mountain State Park sign, and approximately 124 feet 9 inches east of a fire hydrant along Hessian Drive—and was thereby caused to fall, sustaining serious personal injuries. Claimant alleges that the State negligently failed to properly fill a hole after removing a tree, stump, pole, or similar object in an area frequented by pedestrians. Claimant further alleges that the State failed to conceal or warn of the dangerous condition by neglecting to fence, barricade, or otherwise mark the hazard.
The parties stipulated to the following facts on the record:
1. On November 28, 2021, New York State was the owner and responsible for maintenance of property located along Hessian Drive in the Town of Highland, County of Orange, State of New York.
2. The property along Hessian Drive is the area where the incident involving Ms. Loma [*2]Yehl occurred on November 28, 2021.
3. Prior to November 28, 2021, Bear Mountain Park maintenance staff would generally drive along Hessian Drive 3-4 times per week.
4. Prior to November 28, 2021, Bear Mountain Park maintenance staff would do general safety inspections when they were in the area along Hessian Drive, which was approximately 3-4 times per week. 
5. The hole that Ms. Yehl alleges that she stepped into was not identified by Bear Mountain Park maintenance staff prior to November 28, 2021.
The following exhibits were entered into evidence upon consent: Claimant's Exhibit 1 (Photograph of accident scene); Claimant's Exhibit 2 (Photograph of accident scene); Claimant's Exhibit 3 (Photograph of accident scene); Claimant's Exhibit 4 (Handwritten Incident Report); Claimant's Exhibit 5 (Jennifer Sylvestri Deposition Transcript); Defendant's Exhibit A (Incident Report); Defendant's Exhibit B (Photograph of the hole after it was filled); Defendant's Exhibit C (Photograph of entrance to Bear Mountain Inn); Defendant's Exhibit D (Photograph of the hole with cone); Defendant's Exhibit E (Photograph of the hole with leaves); Defendant's Exhibit F (Photograph of hole with cone); Defendant's Exhibit G (Photograph of hole); Defendant's Exhibit H (Photograph of the hole from across the roadway); Defendant's Exhibit I (Photograph of the hole); Defendant's Exhibit J (Photograph of hole from across the road).
The Court took judicial notice of the pleadings, which are part of the Court's record, to wit: Verified Claim (138635) (Court's Exhibit 1); Verified Answer (Court's Exhibit 2); and Verified Bill of Particulars (Court's Exhibit 3) (see e.g. People v Petgen, 55 NY2d 529, 536 [1982] [recognizing a court's authority to take judicial notice of its own records]; Pramer S.C.A. v Abaplus Intl. Corp., 76 AD3d 89, 102 [1st Dept 2010] [taking judicial notice of undisputed court records and files]).
 RELEVANT TESTIMONY
Roger Brown
Roger Brown testified that on November 28, 2021, he and Claimant were on their first date. They had planned to take a walk together at Bear Mountain State Park. He stated that they parked at the top of the hill and began walking down Hessian Drive toward the lake. As they approached the area near the Bear Mountain Inn, they cut across a grassy area adjacent to Hessian Drive, with the intention of reaching the lake by the most direct and safe route.
According to Mr. Brown, as they crossed the grassy area, he was walking slightly ahead of Claimant when he suddenly heard her cry out. He turned around and saw her fall to the ground. When he approached her, he observed that she had stepped into a square-shaped hole, which he estimated to be approximately 12 inches square and about 8 to 10 inches deep.
Roger Brown further testified that after the incident, he returned to the site and saw that the hole had not been filled. Concerned that someone else could be injured, he placed a traffic cone into the hole. He testified that the cone had been located on the opposite side of Hessian Drive, and he retrieved it specifically for the purpose of marking the hazard. He did not see any cones or warning signs in the area prior to Claimant's fall.
He further explained that they chose to walk across the grassy area, rather than remain on the road, because traffic on Hessian Drive posed safety concerns. He emphasized that there were no signs, barriers, or warnings indicating that pedestrians were prohibited from using the grassy area, nor any indication of potential hazards.
On cross-examination, Roger Brown acknowledged that he did not take any photographs of the hole himself but confirmed the accuracy of Claimant's photographs entered into evidence.
Claimant, Loma Yehl
Claimant testified that, prior to the date of the accident, she would visit Bear Mountain State Park approximately four times per week. However, due to a hip surgery, her last visit to the park before the incident had been in September 2021. On prior visits, Claimant stated that she typically parked at the Overlook Lodge, located at the top of Hessian Drive. On the date of the incident, Claimant and her companion, Mr. Brown, parked in the same location and proceeded to walk down the hill with the intention of cutting across to reach the lake. The route they took led them through the area where the accident ultimately occurred.
Claimant testified that she had previously traversed that same path during prior visits to the park and had never experienced any difficulty walking across the grassy area where rocks were located. She stated it was her regular practice to follow the worn path used by other park visitors, deliberately avoiding the traffic circle due to what she described as hazardous conditions in that area. She further testified that the route she followed on the day of the incident is a commonly used as a recognizable pedestrian path, and that she had frequently observed others walking across the same grassy area. According to her testimony, on the morning of the incident, she began walking down Hessian Drive and, upon reaching the edge of the blacktop, continued walking between the rocks. Mr. Brown was walking to her left, and she was looking ahead at him as they conversed. It was at that point that she fell into a hole. She described falling and rolling to her side, at which point Mr. Brown immediately assisted her. Both observed the hole in the ground at that time. She further stated that the ground conditions were wet and rainy that morning, and the area was covered in dark-colored oak leaves. She also noted that vehicular traffic regularly travels along Hessian Drive.
During cross-examination, Claimant confirmed that on the date of the accident she cut through the grassy area to reach the blacktop walking path. She reiterated that she had been conversing with Mr. Brown at the time of the fall and that he was walking slightly ahead of her. She acknowledged that she was looking at him while walking and, as a result, did not see the hole prior to stepping into it. After the fall, she was able to stand up and walk to a nearby bench, although she could not recall how long she remained at the park afterward. She testified that she did not leave the park immediately following the incident, nor did she report the fall that day. Instead, she reported the incident several days later upon the suggestion of Mr. Brown, who expressed concern that another individual might also fall into the hole. Claimant stated that she made the report within that same week.
Jennifer Sylvestri
Jennifer Sylvestri testified that she is currently employed by the New York State Office of Parks, Recreation and Historic Preservation, and as of November 28, 2021, she held the position of Park Manager III at Bear Mountain State Park. Prior to that appointment, she served as interim manager at Bear Mountain State Park and had held various supervisory positions in multiple parks within the region since 2009.
Ms. Sylvestri explained that her responsibilities as Park Manager III included oversight of all park operations, including maintenance, administration, staff supervision, and safety inspections. She testified that Bear Mountain State Park encompasses approximately 5,500 acres [*3]and includes public amenities such as hiking trails, picnic areas, Hessian Lake, a swimming pool, and the Bear Mountain Inn (Overlook Lodge). She noted that some areas of the park are designated for public use and receive regular maintenance, while others are undeveloped and not designated for pedestrian traffic.
She testified that maintenance staff at the park are generally tasked with landscaping, garbage collection, bathroom cleaning, and ensuring a clean and safe environment. The number of maintenance staff varies by season, with higher staffing in the summer months. Ms. Sylvestri testified that maintenance staff typically drive up and down Hessian Drive three to four times per week to collect garbage and perform inspections, although this is usually done from vehicles rather than on foot.
With respect to the incident in question, Ms. Sylvestri testified that Claimant appeared at the park office on December 6, 2021, to report that she had fallen into a hole on park grounds. Ms. Sylvestri stated that she immediately drove to the site described by Claimant, where she observed a hole in the grassy area along the southern shoulder of Hessian Drive. She took photographs of the hole in its condition at that time, which included a broken cone inserted into it. She testified that she placed caution tape and additional cones around the hole and directed park maintenance staff to fill it the following morning.
Ms. Sylvestri testified that she had been familiar with the area of Hessian Drive and the surrounding grassy area, but stated that it was not designated as a walking path and was not considered a high-traffic area. As such, that area did not receive the same level of routine inspection and upkeep as other parts of the park. She acknowledged that while Hessian Drive leads to guest lodges at the Bear Mountain Inn and is used by hotel guests and park visitors alike, the roadside grassy areas are not intended or maintained for public pedestrian use.
On cross-examination, Ms. Sylvestri stated that she had received no prior reports or complaints about the hole before December 6, 2021. She acknowledged that in a typical work week, she would expect maintenance staff to travel that section of Hessian Drive three to four times for routine tasks. However, she conceded that staff conducted these observations from vehicles and may not have had a clear view of the roadside grassy area. She further testified that a hole in the ground constitutes a safety hazard and that she acted swiftly to remedy the issue once notified.
She confirmed that there were no signs, fences, cones, or other barriers to warn individuals against walking in the area where the hole was located. While she testified that the area was not a designated path, she acknowledged the possibility that guests or patrons might choose to walk there, and stated that the placement of caution tape and cones was intended to prevent further incidents.
Ms. Sylvestri also admitted that, based on the photographs introduced into evidence, the hole was located approximately one foot off the paved roadway. She testified that although she had been in the area multiple times, she had never seen the hole prior to Claimant's report and had not been advised of its existence by staff or visitors.
Relevant Portions of Jennifer Sylvestri's Deposition
At her deposition, conducted on July 11, 2024, Ms. Silvestri testified that "[i]f a hazardous condition is identified, that would typically be the responsibility of the Parks Department to rectify" (Ex. 5, p. 16, lines 15-25). She further stated that park staff conduct general visual inspections of the area depicted in Defendant's Exhibit A, page 1, "when we are in the vicinity, which is approximately three to four times a week, a typical week, but it could be [*4]more often" (Ex. 5, p. 18, line 12 through page 19, line 7). These inspections, according to Ms. Sylvestri, consist of a visual assessment for any potentially hazardous conditions, which she acknowledged could include a hole in the ground (Ex. 5, p. 19, lines 8-17).
With respect to the Bear Mountain Inn parking lots located up the road from the site of the incident, Ms. Sylvestri testified that those lots are designated for guests of the Inn and are posted with signage indicating as much (Ex. 5, p. 20, lines 20 through p. 21, line 8). Notably, Ms. Silvestri stated "do people do it [park at the Inn and then go to the park], certainly" (Ex. 5, p. 21, line 4). She confirmed that there are no formal enforcement measures for parking at the Inn, such as ticketing, imposed on those who violate the posted parking restrictions.
Ms. Sylvestri also testified that she personally inspected the site later that same day, took photographs with her cell phone, and observed a hole in the ground into which a cone had been placed, although the cone did not fully fit (Ex. 5, p. 261.8-281.12). She estimated the hole to be approximately one foot wide and one foot deep (Ex. 5, p 28, lines 10-15). She acknowledged that such a condition is one she would expect park maintenance staff to detect during routine visual inspections (Ex. 5, p. 29, lines 21-15).

ORAL MOTIONS
Upon conclusion of Claimant's case-in-chief, Defendant moved to dismiss the Claim. Claimant moved for a directed verdict at the conclusion of trial. The Court reserved decision on both applications.

LAW AND ANALYSIS
It is well-settlement that a landowner has a duty to maintain its property in a reasonably safe condition, in view of all the circumstances (Basso v Miller, 40 NY2d 233 [1976]). The State, as a landowner, is subject to the same rules governing private landowners (Preston v State of New York, 59 NY2d 997 [1983]). Accordingly, the State must act as a reasonable person to maintain its property in a reasonably safe condition in view of all circumstances, but it is not an insurer against any injury that might occur (Miller v State of New York, 62 NY2d 506 [1984]; Killeen v State of New York, 66 NY2d 850 [1985]; Smith v State of New York, 260 AD2d 819 [3d Dept 1999]). The State has a common-law duty to maintain its facilities "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk," with foreseeability constituting the measure of liability (Basso, 40 NY2d at 241 [1976], quoting Smith v Arbaugh's Rest., 469 F2d 97, 100 [DC Cir. 1972], cert denied 412 US 939 [1973]; see Galindo v Town of Clarkstown, 2 NY3d 633, 636 [2004]).
To recover damages resulting from a breach of this duty, a claimant bears the burden of establishing, by a preponderance of the credible evidence: (1) that defendant owed claimant a duty of care; (2) that a dangerous condition existed constituting a breach of that duty; (3) that defendant either created the condition or had actual or constructive notice of it and failed to remedy it within a reasonable time; and (4) that the condition was a substantial factor in causing claimant's injuries (see Solomon v City of New York, 66 NY2d 1026, 1027 [1985]; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]; Keating v Town of Burke, 86 AD3d 660 [3d Dept 2011]).
The scope of that duty may also include the duty to warn of a dangerous condition. However, a landowner is not obligated to warn against conditions on its property that could be [*5]readily observed using one's senses (Tagle v Jakob, 97 NY2d 165 [2001]; Cupo v Karfunkel, 1 AD3d 48 [2d Dept 2003]). Furthermore, negligence cannot be inferred solely from the occurrence of an accident (see McMullen v State of New York, 199 AD2d 603, 604 [3d Dept 1993]; Tripoli v State of New York, 72 AD2d 823, 823 [3d Dept 1979]).
Constructive notice may be established where here a visible and apparent defect existed for a sufficient period prior to the accident to permit discovery and remediation by the State (Gordon v American Museum of Natural History, 67 NY2d 836 [1996]). As the Court of Appeals in Liriano v Hobart Corp., 92 NY2d 232, 242 [1998], has held:
Where a danger is readily apparent as a matter of common sense, 'there should be no liability for failing to warn someone of a risk or hazard which he [or she] appreciated to the same extent as a warning would have provided.' Put differently, when a warning would have added nothing to the user's appreciation of the danger, no duty to warn exists as no benefit would be gained by requiring a warning (internal quotation marks and citation omitted).
"For a condition to be open and obvious as a matter of law, it must be one that could not be overlooked by any observer reasonably using his or her ordinary senses" (Garrido v City of New York, 9 AD3d 267, 268 [1st Dept 2004]; see Westbrook v WR Activities-Cabrera Mkts., 5 AD3d 69, 71 [1st Dept 2004]). A court may determine that a risk was open and obvious as a matter of law only "when the established facts compel that conclusion . . . and may do so on the basis of clear and undisputed evidence" (Tagle v Jakob, 97 NY2d 165, 169 [2001]). Notwithstanding, "[a] claimant has the duty to use reasonable care to observe his or her surroundings, to see what is there to be seen, and to avoid accidents" (Panebianco v State of New York, 38 Misc 3d 1218 [A] [Ct Cl 2012] [citations omitted]). "There is no duty to warn of a condition that can be readily observed by the reasonable use of senses" (internal quotation marks and citations omitted)]). Yet, "although some hazards may be 'technically visible,' if their 'nature or location' makes them 'likely to be overlooked,' then the facts do not compel the conclusion that such hazards or conditions are open and obvious" (Soto v 2780 Realty Co., LLC, 114 AD3d 503, 503 [1st Dept 2014]). Further, a duty to warn against known or obvious dangers may arise where the landowner has reason to expect or anticipate that one's attention may be distracted, so that what is obvious will not be discovered or one may fail to protect oneself against it (see Spannagel v State of New York, 298 AD2d 687, 689 [3d Dept 2002]).
Relevant here, to constitute constructive notice, a defect must be "visible and apparent and it must exist[] for a sufficient period of time prior to the accident to permit defendant['s] to discover it and take corrective action . . . " (Gordon supra at 837; Torosian v Bigsbee Vil. Homeowners Assn., 46 AD3d 1314, 1315 [3d Dept 2007]). A claimant "can establish constructive notice through evidence that the defendant 'was aware of an ongoing and recurring unsafe condition which regularly went unaddressed'" (Mazerbo v Murphy, 52 AD3d 1064, 1066 [3d Dept 2008], appeal dismissed 11 NY3d 770 [2008], quoting Kivlan v Dake Bros., 255 AD2d 782, 783 [3d Dept 1998]). "When a property owner has 'actual knowledge of the tendency of a particular dangerous condition to reoccur, he [or she] is charged with constructive notice of each specific recurrence of that condition'" Kivlan v Dake Bros., supra, quoting Columbo v James River, II, Inc., 197 AD2d 760, 761 [3d Dept 1993]; accord Bush v Mechanicville Warehouse Corp., 69 AD3d 1207, 1208 [3d Dept 2010]); Weisenthal v Pickman, 153 AD2d 849, 851 [2d Dept 1989]).
CPLR 1411 provides that in an action to recover damages for personal injury, "the culpable conduct attributable to the claimant . . . including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant bears to the culpable conduct which caused the damages." Such culpable conduct "shall be an affirmative defense to be pleaded and proved by the party asserting the defense" (CPLR 1412; see Defendant's Verified Answer, at ¶ 10). Under the doctrine of comparative negligence, when defendant's negligence is established, the factfinder must still determine whether claimant was negligent and whether such negligence "was a substantial factor in causing [claimant's] own injuries" (See Rodriguez v City of New York, 31 NY3d 312, 324 [2018]).
After careful consideration of the testimony and all evidence presented, including the demeanor and credibility of the witnesses, the Court finds as follows:
The State's duty to maintain its property in a reasonably safe condition encompasses not only the paved portions of the roadway, but also adjacent areas under its control when it is reasonably foreseeable that pedestrians will use them. The scope of that duty is measured by what is reasonable and foreseeable under the circumstances, including the nature of the location and its ordinary and expected use. In this case, the State's failure to maintain the grassy shoulder of Hessian Drive—an area adjacent to a roadway connecting public attractions and parking facilities—is legally significant. Where the State is, or should be, aware that a particular area is routinely used by pedestrians, the duty to maintain that area in a reasonably safe condition attaches (Dapp v Larson, 240 AD2d 918 [3d Dept 1997]).
The record establishes that pedestrians, including the Claimant, regularly use the grassy shoulder of Hessian Drive to travel between the Bear Mountain Inn parking lot and nearby recreational areas. The State either knew or should have known of this pedestrian traffic, particularly given the absence of sidewalks or marked walkways. The testimony of Ms. Sylvestri appeared to be contrived—her demeanor and body language suggested to the Court that she was aware pedestrians used Hessian Drive to access the park from the parking lot. Although she attempted to recast her statements, the Court finds her trial testimony to be a clear attempt to minimize what she knew and had personally observed. Furthermore, her deposition testimony makes clear that she was aware that park users parked at the Bear Mountain Inn and walked down Hessian Drive to access the park. By permitting a foreseeable condition to persist—namely, a large hole filled with leaves in an area customarily used by pedestrians entering the park from the parking lot of the Inn—the State failed to meet its obligation to prevent or warn against hazards that pose a danger to ordinary users.
Constructive notice may be imputed where a dangerous condition is visible and apparent and has existed for a sufficient length of time prior to the accident to permit the defendant to discover and remedy it (Gordon, 67 NY2d at 836; Negri v Stop & Shop, Inc., 65 NY2d 625 [1985]). In this case, there is no evidence that the hazard—a twelve-inch hole with a depth of approximately eight inches—was newly created or transient. Based on credible testimony that the area was not designated as a high-priority maintenance zone, the Court infers that the State failed to discover and correct a condition that posed a foreseeable risk to those walking along the roadside. A failure to inspect or maintain an area known to accommodate pedestrian traffic constitutes a breach of duty (Basso, 40 NY2d at 241).
At the same time, liability in negligence is not absolute, and courts must consider the conduct of all parties under CPLR Article 14-A. The doctrine of comparative negligence requires [*6]that a claimant's failure to exercise reasonable care for her own safety proportionally reduces any recovery (Thoma v Ronai, 82 NY2d 736 [1993]). Here, the evidence demonstrates that Claimant was not looking at the surface where she was walking, despite her awareness that she was traversing an unpaved, grassy area adjacent to a public roadway. "A [claimant] is under a duty to see what there is to be seen and must exercise reasonable use of her senses" (Weigand v United Traction Co., 221 NY39, 42 [1917]; see also Cohen v A.C.E. Hardware of Manlius, Inc., 48 AD3d 912 [3d Dept 2008]). This principle is particularly applicable where a pedestrian chooses to walk on an unmarked and potentially uneven surface. Claimant testified that she was not looking at the ground as she walked, but rather was focused on her companion as they conversed. A reasonably prudent person would exercise caution when walking over such terrain, particularly one adjacent to a public roadway. Although Claimant's decision to walk along the grassy area was foreseeable and reasonable under the circumstances—given the absence of a sidewalk—the obligation to remain attentive remained. Courts have consistently held that a pedestrian who fails to observe visible hazards in their path may bear a share of liability for resulting injuries (Martinez v Khaimov, 74 AD3d 1031 [2d Dept 2010]; Friscia v New York City Tr. Auth., 170 AD3d 775 [2d Dept 2019]). Claimant's failure to observe the surface she was traversing was a contributing factor to her fall. Her inattentiveness, while not the primary cause, contributed in a meaningful way to the incident and warrants an apportionment of liability under the doctrine of comparative fault.
In weighing the comparative fault of the parties, the Court finds that the State bears the majority of responsibility for failing to maintain an area it knew or should have known was regularly used by pedestrians. The presence of an unmarked hazard in an area commonly used to access the park from the Bear Mountain Inn parking lot represents a significant departure from the standard of reasonable care. Nevertheless, Claimant's own inattentiveness was a contributing factor. Balancing these considerations, the Court apportions liability at 70% to the Defendant and 30% to the Claimant. Pursuant to CPLR 1411, any award of damages shall be reduced by the percentage of fault attributable to the Claimant.
The Clerk of the Court is directed to enter interlocutory judgment in accordance herewith and a damages trial will be scheduled by the Court as soon as practicable.
The parties are encouraged to consider alternative dispute resolution for the ascertainment of damages.
Dated: July 28, 2025
Hauppauge, New York
HON. LINDA K. MEJIAS-GLOVER,
Judge of the Court of Claims