Powers v State of New York (2026 NY Slip Op 01833)

Powers v State of New York

2026 NY Slip Op 01833

Decided on March 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 26, 2026

CV-25-0227
[*1]Patrick Powers, Appellant,
vState of New York, Respondent.

Calendar Date:January 7, 2026

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Anderson, Moschetti & Taffany, PLLC, Latham (David J. Taffany of counsel), for appellant.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Court of Claims (Catherine Schaewe, J.), entered January 3, 2025, upon a decision of the court in favor of defendant.
Claimant, a contractor, was working at Woodbourne Correctional Facility on December 22, 2021. Shortly after claimant arrived at the facility, he slipped and fell on ice in the parking lot. He commenced this negligence action to recover for his injuries sustained in the fall. The Court of Claims conducted a bifurcated trial on the issue of liability and, at the close of claimant's proof, defendant declined to call any witnesses or offer any additional proof and instead moved to dismiss the claim under the storm in progress doctrine. The court reserved decision on the motion and ultimately found for defendant and dismissed the claim.[FN1] Claimant appeals.
"Inasmuch as this is an appeal from a judgment issued after a nonjury trial, we are able to independently review the weight of the evidence and, while according appropriate deference to the trial judge's credibility assessments and factual findings, grant the judgment warranted by the record" (Williams v State of New York, 140 AD3d 1376, 1377 [3d Dept 2016] [internal quotation marks, ellipsis and citations omitted]; see Miletta v State of New York, 229 AD3d 981, 981 [3d Dept 2024]). "As with any other landowner, the state has a duty to maintain its property in a reasonably safe condition in view of all the circumstances" (Guzman v State of New York, 221 AD3d 1107, 1108 [3d Dept 2023] [internal quotation marks and citations omitted]; see Williams v State of New York, 140 AD3d at 1377). "In a slip and fall case such as this, claimant has the burden of establishing a dangerous or defective condition that defendant created or had knowledge (actual or constructive) of, and that such condition was a cause of the accident" (Gonzalez v State of New York, 60 AD3d 1193, 1194 [3d Dept 2009] [citations omitted], lv denied 13 NY3d 712 [2009]; see Guzman v State of New York, 221 AD3d at 1108).
As the record evinces, the Court of Claims correctly determined that a dangerous condition existed in the parking lot where claimant fell. The critical issue to be resolved, then, is whether defendant had knowledge of the dangerous condition and failed to take appropriate measures to keep the parking lot safe. The evidence at trial established that claimant and his foreman arrived at the facility at approximately 7:00 a.m. and proceeded to park in a paved area in front of the Green Building. Claimant explained that they had been directed to park in that area and that they had parked there numerous times in the past, as they often used the Green Building for staging and storing parts. When he exited the truck and stepped onto the pavement, both feet slipped out from underneath him and he fell. While on the ground, claimant became aware that he had fallen on ice and that the area had not been sanded or salted. A plant superintendent responsible for the physical properties of the [*2]facility, including seasonal snow and ice removal, testified that all paved areas at the facility that are accessible by maintenance vehicles are to be plowed, sanded/salted,[FN2] and that he had an annual meeting with his maintenance workers wherein he would relay this directive to them. He recalled that on the morning of December 22, 2021, he spotted claimant on the ground as he arrived at work and stopped to see if he was hurt. He confirmed that the area was very slippery and that, in fact, he almost fell when he got out to check on claimant. He further stated that as a paved area, it should have been sanded/salted, but that it was not. He further affirmed that contractors are allowed to park in the lot where claimant fell and that the area is accessible to a sander truck. An employee of defendant, who performs snow and ice removal, testified that he had been called to the facility to sand/salt on December 22, and that he had done so from approximately midnight until 2:00 a.m. He admitted that he did not sand/salt the paved area in front of the Green Building. Finally, claimant's expert meteorologist testified that there were "pockets" of freezing rain between the hours of midnight and 3:45 a.m. on December 22, causing a glaze of ice to form measuring between .05 to 0.1 inches and that temperatures ranged between 28 and 31 degrees. She further avowed that, based on the amount of ice and the attendant weather conditions, salt would have melted said ice and prevented any further accumulation.
Our independent review of the evidence persuades us that the claim was improperly dismissed and, accordingly, we reverse. The evidence establishes that defendant had actual notice of the icy conditions caused by the pockets of freezing rain and called in an employee to take appropriate measures to correct the dangerous condition by implementing defendant's usual precautions of sanding/salting all paved areas accessible to the sander trucks.[FN3] Even assuming that the record was insufficient to establish actual notice, we are satisfied that defendant had constructive notice of the dangerous condition in the location of claimant's slip and fall. Based on the expert's testimony of icy conditions forming through 3:45 a.m., defendant should have been aware of the slippery conditions on untreated surfaces between approximately 12:00 a.m. and 2:00 a.m., the time when defendant's employee was performing "multiple" salting and sanding passes on the facility's roads for "safety," approximately five to seven hours before claimant's fall, which is a sufficient time to establish constructive notice (see Slaughter v State of New York, 238 AD2d 770, 771-772 [3d Dept 1997]; Citta v State of New York, 35 AD2d 288, 289-290 [4th Dept 1970]; see also Hanna v State of New York, 84 Misc 3d 1244[A], 2024 NY Slip Op 51681[U], *10 [Ct Cl, 2024 Brindisi, J.]). Although claimant described the dangerous condition as clear, black ice, when further considering that defendant's employee was called [*3]in around midnight for "road conditions," with the testimony of the superintendent describing the roadways around the correctional facility as "[e]verything was slippery that morning" and claimant's description of the area where he fell, we are satisfied that such condition was also visible and apparent (see Doyle v Tops Mkts., LLC, 234 AD3d 1339, 1340 [4th Dept 2025]; Slaughter v State of New York, 238 AD2d at 771).
The evidence further establishes that the employee failed to sand/salt the lot where claimant fell, despite its paved nature, and that this was the proximate cause of claimant's injuries. We thus find that this is distinguishable from a situation where a defendant had undertaken efforts to clear and sand/salt the area and thereafter had merely a "general awareness that snow and ice may accumulate" (Cardinale v Watervliet Hous. Auth., 302 AD2d 666, 667 [3d Dept 2003]). As such, we find that the state failed to maintain the parking lot in a reasonably safe condition "in view of all the circumstances, including the likelihood of injury, the potential seriousness of such injury, and the relatively slight burden of rectifying the hazard" (Montross v State of New York, 219 AD2d 845, 845 [4th Dept 1995] [citations omitted]). Accordingly, defendant failed to exercise due care to correct a dangerous condition (see De Los Santos v State of New York, 290 AD2d 271, 271 [1st Dept 2002]; Montross v State of New York, 219 AD2d at 845; Saiia v State of New York, 190 AD2d 1059, 1059 [4th Dept 1993]).
Finally, we are unpersuaded by defendant's contention that the storm in progress doctrine absolves it of liability. "Under the storm in progress doctrine, a property owner will not be held liable in negligence for a [claimant's] injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter" (Gagne v MJ Props. Realty, LLC, 221 AD3d 1210, 1211 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Scheuer v State of New York, 198 AD3d 1225, 1227 [3d Dept 2021]). "The rule is designed to relieve a landowner of the obligation to clear the area while continuing precipitation or high winds are simply re-covering it as fast as they are cleaned, thus rendering the effort fruitless" (Anson v Monticello Raceway Mgt., Inc., 217 AD3d 1231, 1231 [3d Dept 2023] [internal quotation marks, brackets and citation omitted]). "Nevertheless, if the storm has passed and precipitation has tailed off to such an extent that there is no longer any appreciable accumulation, then the rationale for continued delay abates, and commonsense would dictate that the rule not be applied" (Scheuer v State of New York, 198 AD3d at 1227 [internal quotation marks and citations omitted; emphasis added]). Although defendant correctly asserts that there is no need for a major weather event to trigger the application of the storm in progress doctrine, the proof must "establish the existence of an ongoing hazardous [*4]weather condition" that amounts to more than trace accumulations (Anson v Monticello Raceway Mgt., Inc., 217 AD3d at 1231 [internal quotation marks, brackets and citation omitted]; see Edmund-Hunter v Toussie, 190 AD3d 946, 947 [2d Dept 2021]; Haraburda v City of New York, 168 AD3d 485, 486 [1st Dept 2019]). Here, the evidence demonstrates that the event in question amounted to "pockets of freezing rain" that fell from approximately midnight until 3:45 a.m. and caused a glaze of ice measuring .05 to 0.1 inches. Defendant begs the question when it immediately argues that it is entitled to a "reasonable period of time" from 3:45 a.m. to address the condition. The threshold question is the applicability of the doctrine in the first instance. While it may be true that there is no need to establish the existence of a major winter event in order to apply the doctrine, it is equally true that there must be some sort of ongoing hazardous weather condition, i.e., a "storm" that amounts to more than an "appreciable accumulation" (Scheuer v State of New York, 198 AD3d at 1227 [internal quotation marks, brackets and citations omitted]; see Gagne v MJ Props. Realty, LLC, 221 AD3d at 1216). The storm in progress doctrine is not to be applied whenever any type of inclement weather exists and, given the unrefuted testimony of claimant's expert meteorologist, it has no place in this litigation. As defendant presented no evidence that claimant was at fault, no apportionment of liability issues exist that would warrant remittal; accordingly, we remit for a trial on damages only.
Aarons, Pritzker and Fisher, JJ., concur.
Clark, J.P. (dissenting).
I disagree with the majority's holding that defendant had actual notice of the icy condition that caused claimant's fall, and I also do not believe that defendant had constructive notice of such condition. The record does not support a finding that defendant created the dangerous icy condition on which claimant fell. In the absence of such proof, defendant cannot be held liable for claimant's injuries. Therefore, I would affirm the judgment of the Court of Claims and respectfully dissent.
As noted by the majority, "an owner of property has a nondelegable duty to maintain its property in a reasonably safe condition, taking into account foreseeability of injuries to others" (Vance v Burkhart, 229 AD3d 869, 870 [3d Dept 2024]). However, a property owner will not be held liable for injuries sustained as a result of a slip-and-fall on ice unless it "created the dangerous [icy] condition which caused the accident[,] or had actual or constructive notice thereof" and failed to take remedial action (Robinson v Trade Link Am., 39 AD3d 616, 616-617 [2d Dept 2007]; see Hernandez v City of New York, 241 AD3d 1293, 1294 [2d Dept 2025]; Weichsel v State of New York, 231 AD3d 1459, 1462-1463 [3d Dept 2024]; Cardinale v Watervliet Hous. Auth., 302 AD2d 666, 666 [3d Dept 2003]; McCormick v Patriot Assoc., 292 AD2d 573, 574 [2d Dept 2002[*5]]; see generally Simmons v Metropolitan Life Ins. Co., 84 NY2d 972, 973-974 [1994]). To establish actual notice, claimant was required to demonstrate that defendant had received prior complaints concerning the presence of ice at the location of claimant's fall or was otherwise actually aware of icy conditions in that area (see Johnson v Pixley Dev. Corp., 169 AD3d 1516, 1519 [4th Dept 2019]; Navetta v Onondaga Galleries LLC, 106 AD3d 1468, 1469 [4th Dept 2013]). When actual notice does not exist, constructive notice may be imputed to a property owner by "showing that the condition was apparent, visible and existed for a sufficient time prior to the accident so as to allow the defendants to discover and remedy the problem" (Weichsel v State of New York, 231 AD3d at 1463 [internal quotation marks, brackets and citations omitted]; see Doyle v Tops Mkts., LLC, 234 AD3d 1339, 1340 [4th Dept 2025]).
Applying these principles, it is my view that the Court of Claims properly dismissed the claim because the proof at trial did not establish defendant's liability. Here, the proof readily established that defendant's agents were aware that freezing rain had fallen intermittently in the hours before claimant's fall and that roads in the vicinity were slippery around the time of the accident. Testimony also established that sanding/salting was done at the facility on an as-needed basis if the night watchman called to inform defendant's plant supervisor of icy or snowy conditions, and that all main roadways, secondary roadways and main parking lots would get this treatment. One of defendant's employees was called around 12:00 a.m. to put down salt and sand at the facility and was there until around 2:00 a.m., but he did not salt/sand in front of the Green Building because he did not believe it to be a parking lot. Claimant's meteorologist described the weather conditions prior to claimant's fall as "pockets or . . . scattered periods of freezing rain" that fell intermittently until 3:45 a.m. on the date of the accident that would result in "a light glaze of ice on the ground surfaces." She further testified that it would be "a very thin layer" of ice and that, "if salt was present on the pavement at these times in below-freezing temperatures as we had here, it would have lowered the freezing point such that ice would not have formed."
Initially, the fact that defendant took it upon itself to apply salt and sand at the facility in the hours prior to claimant's fall, but failed to clear all of the ice on that date, does not constitute the affirmative creation of a dangerous condition sufficient to hold defendant liable for claimant's injuries (see Wheeler v Grande'Vie Senior Living Community, 31 AD3d 992, 992-993 [3d Dept 2006]; DiGrazia v Lemmon, 28 AD3d 926, 928 [3d Dept 2006], lv denied 7 NY3d 706 [2006]). Relatedly, although I am mindful that defendant's salting/sanding efforts on the morning in question did not involve the area in front of the Green Building [*6]and the meteorologist confirmed that putting down salt would have prevented ice formation in that area, the failure to do so does not establish defendant's breach of a legal duty in the absence of actual or constructive notice that ice was present in that location (see Lloyd v 797 Broadway Group, LLC, 216 AD3d 1290, 1292 [3d Dept 2023]; see also Lee S. Kriendler et al., New York Law of Torts § 12:11 [West's NY Prac Series, Nov. 2025 update]; Mark C. Dillon, Breaking the Ice: How Plaintiffs May Establish Premises Liability in "Black Ice" Cases Where the Dangerous Condition is By Definition Not Visible or Apparent to Property Owners, 43 Hofstra L Rev 691 [2015]).
Moreover, I disagree with the majority's finding that the testimony relative to the prior ice removal efforts demonstrated that defendant had actual notice of the icy condition that caused claimant's injuries. In that regard, it must first be emphasized that, in the context of this case, claimant was required to prove defendant's liability by a preponderance of the evidence (see Atkinson v Golub Corp. Co., 278 AD2d 905, 906 [4th Dept 2000]). The proof at trial established that defendant's employee had been called to sand and salt the exterior roadways and parking lots at the facility in the hours prior to claimant's fall in accordance with a policy to do so in the face of inclement weather and/or icy conditions at the facility. However, there was no proof presented at trial that the night watchman who called the plant supervisor to coordinate such efforts did so based upon a concern about icy conditions in front of the Green Building itself. Notably, the plant supervisor who provided the testimony about defendant's snow and ice removal policy revealed that, when the night watchman made a request for defendant's maintenance workers to put down sand and salt at the facility, defendant's maintenance workers did so "no matter what," even on surfaces where no ice was present. Accordingly, the testimony relative to defendant's remedial efforts in the hours before claimant's fall does not support an inference that defendant was actually aware of the icy conditions at the specific location of the incident, and there was likewise no proof demonstrating that defendant had received prior complaints about icy conditions at such location (see Johnson v Pixley Dev. Corp., 169 AD3d at 1519; Navetta v Onondaga Galleries LLC, 106 AD3d at 1469).[FN4]
In my view, the testimony about prior salting/sanding would — if anything — go to the issue of constructive notice, not actual notice. Nevertheless, such testimony established, at most, a general awareness of icy conditions at Woodbourne Correctional Facility, which is "insufficient to provide [actual or] constructive notice of the injury-producing condition" at the location where the accident occurred (Rodriguez v Binghamton Hous. Auth., 101 AD3d 1222, 1224 [3d Dept 2012] [internal quotation marks and citation omitted]; see Meyers v Big Six Towers, Inc., 85 AD3d [*7]877, 878 [2d Dept 2011]; Kaplan v DePetro, 51 AD3d 730, 731 [2d Dept 2008]; Cardinale v Watervliet Hous. Auth., 302 AD2d at 667; Smith v State of New York, 260 AD2d 819, 821 [3d Dept 1999]; see also Piacquadio v Recine Realty Corp., 84 NY2d 967, 969 [1994]; compare Vincent v Landi, 123 AD3d 1183, 1185 [3d Dept 2014]).
Additionally, the evidence at trial did not establish that the ice on which claimant fell was visible, apparent and existed for a sufficient amount of time prior to the accident so as to impute constructive notice to defendant. Claimant himself testified that he did not see any ice before he fell at approximately 7:00 a.m. and that he only realized he had slipped on ice by reaching down to feel the ground where he slipped, describing that there were pockets of "black ice" that were "clear" (see Pierson v North Colonie Cent. School Dist., 74 AD3d 1652, 1655 [3d Dept 2010], lv denied 15 NY3d 715 [2010]; Stoddard v G.E. Plastics Corp., 11 AD3d 862, 863 [3d Dept 2004]; Smith v State of New York, 260 AD2d at 821; Golonka v Saratoga Teen & Recreation of Saratoga Springs, 249 AD2d 854, 856 [3d Dept 1998]). Claimant's coworker, who was with him at the time of the accident, had gotten out of the vehicle and traversed the area without incident prior to claimant's fall. Nor was there any evidence that the area in question was prone to developing black ice, that defendant knew as much, or that defendant had notice of any prior falls in that area on the date in question. Moreover, in my view, claimant did not establish that the ice on which he fell existed for a "sufficient time prior to the accident so as to allow the defendant[ ] to discover and remedy the problem" (Weichsel v State of New York, 231 AD3d at 1463 [internal quotation marks and citations omitted]; see Gilbert v Evangelical Lutheran Church in Am., 43 AD3d 1287, 1288 [4th Dept 2007], lv denied 9 NY3d 815 [2007]).
For the foregoing reasons, I would defer to the credibility determinations and factual findings made by the Court of Claims and affirm the decision below (see Williams v State of New York, 140 AD3d 1376, 1377 [3d Dept 2016]). Because the proof fails on the notice issue, it is not necessary to address the storm in progress defense raised by defendant.
ORDERED that the judgment is reversed, on the law, without costs, judgment granted in favor of claimant on the issue of liability and matter remitted to the Court of Claims for a trial on damages only.

Footnotes

Footnote 1: The Court of Claims denied defendant's motion to dismiss the claim under the storm in progress doctrine. On appeal, defendant once again raises this doctrine as a defense.
Footnote 2: The plant superintendent testified that defendant uses a mixture of salt and sand.

Footnote 3: Although not dispositive, in its decision denying summary judgment, the Court of Claims found that defendant "clearly had actual notice of the slippery condition."

Footnote 4: Although defendant's plant supervisor also slipped on ice in front of the Green Building on the date of the underlying accident, this occurred after claimant's fall.